IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARGARET M. JOHNSON, INDIVIDUALLY
AND ON BEHALF OF ALL HEIRS-AT-LAW
AND WRONGFUL DEATH BENEFICIARIES
OF LANEIKA BROWN, DECEASED AND THE
ESTATE OF LANEKIA BROWN                                              PLAINTIFFS

v.                                                          CASE NO.: 3:21-cv-335-DPJ-FKB

MADISON COUNTY, ET AL.                                               DEFENDANTS

<u>**DECLARATION OF SHERIFF RANDALL TUCKER**</u>

I, Sheriff Randall Tucker, make the following declaration based on my personal

knowledge:

1.      I hold the position of Sheriff of Madison County, and, in that position, I was

responsible for the operations at the Madison County Detention Center ("MCDC") in Madison

County, Mississippi, during November and December 2018, when the deceased, Laneika Brown,

was arrested by the City of Madison Police Department on November 26, 2018, for the

possession with intent to sell marijuana and booked into the Madison County Detention Center

("MCDC").  (See Exhibit A, Intake Report).

2.      I am familiar with the incident involving Laneika Brown that occurred on

December 22, 2018, and continued into December 23, 2018, after she was brought to medical at

the MCDC and eventually placed in the medical holding cell, although I was not physically

present at the MCDC on these dates.

3.      I am attaching to my Declaration as Collective Exhibit B certain Standard

Operating Procedures ("SOP's") that governed the provision of medical care to detainees and

prisoners at the MCDC that were in effect when Ms. Brown arrived at the MCDC.

EXHIBIT 1

4.      Pursuant to SOP 6.01, in October 2018 the Madison County Board of Supervisors entered into a contract with Mississippi Correctional Services, LLC ("MCS") to be an independent contractor at the MCDC for the provision of medical care to the detainees and prisoners housed there.  A copy of the contract entered into between MCS and Madison County is attached to my Declaration as Exhibit C.

5.      Pursuant to SOP 6.03, when Ms. Brown was booked into the MCDC, she was medically screened by MCDC officers.  (Exhibit A).

6.      Further, pursuant to SOP 6.05, Ms. Brown was seen by the medical care provider at the MCDC and assessed on December 5, 2018.  (Exhibit D).

7.      The medical intake form prepared by a MCDC officer shows that Ms. Brown was pregnant.  (Exhibit A).   The assessment by the medical care provider and further records prepared by it on Ms. Brown during her stay at the MCDC show that she was prescribed prenatal vitamins.  (Exhibit E).

8.      Ms. Brown submitted a written complaint to medical about conditions related to her pregnancy twice, once on December 5, 2018, and again on December 21, 2018, and was seen in medical for those complaints on the same day she made them.  (Exhibit F).

9.      Ms. Brown also verbally complained to a MCDC officer on December 22, 2018, of further complaints related to her pregnancy, and, as a result, that MCDC officer called for help and transported Ms. Brown to medical immediately.  (Exhibit G).

10.      After being seen in medical as a result of those complaints, the MCS nurse who assessed Ms. Brown's complaints placed her in the medical holding cell so that she could be observed.

2

11.     Pursuant to SOP 2.01, after Ms. Brown was placed in the medical holding cell, she was observed by MCDC officers every 15 minutes from December 22, 2018, until her death on December 23, 2018.  (Exhibit H).

12.     On December 23, 2018, the MCDC officer conducting 15 minute observations of Ms. Brown discovered her to be unresponsive and summoned the nurse in medical to assess her condition; afterwards, CPR was begun on Ms. Brown by both the nurse and MCDC officers, and EMS and an ambulance were immediately called to the MCDC.  (Collective Exhibit I).

13.     My review of (1) Ms. Brown's MCDC file, (2) the incident reports prepared by the MCDC officers who observed her and responded to her after she was found unresponsive in the medical holding cell, and (3) the video of her stay in the medical holding cell has confirmed to me that each MCDC officer who had any dealing with Ms. Brown on December 22, 2018, and December 23, 2018, followed the applicable SOP's of the MCDC.

14.     There has never existed any long-standing pattern or practice at the MCDC of the denial of medical care to detainees and prisoners housed there during the more than nine years years I have served as Sheriff of Madison County.

15.     The seven MCDC officers who dealt with Ms. Brown on December 22, 2018, and December 23, 2018, had attended numerous in-house training sessions at the MCDC and were required to undergo training at an Academy or Institute approved by the Mississippi Detention Officers Standards and Training Board within two years after being hired as an officer at the MCDC.

16.     These officers' Certificates of Training are attached to my Declaration as Collective Exhibit J.

3

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. § 1746.

02/17/2022
Date

SHERIFF RANDALL TUCKER

## Madison County Detention Center
2935 Highway 51 South
Canton, MS 39046
Sheriff Randall Tucker

### Intake Report
00/00/0000 :00

[ Person ]
**Name:** LANEKIA M. BROWN
**ADDR:** 139 GOODWIN DRIVE
GRENADA, MISSISSIPPI 38901
**HOME #:** (662) 307-6470
**DOB:** 06/18/1981   **AGE:** 037
**POB:** GRENADA, MISSISSIPPI

*** HOLD ***
GRENADA PD
662-378-1515



[ Description ]
**HGT:** 509        **WGT:** 204
**RACE:** BLACK     **SEX:** F
**HAIR:** BLACK     **EYE:** BROWN
**FHAIR:** NOT APPL   **COMPL:** MEDIUM B
**TEETH:** MISSING
**SMT1:** TAT UL ARM TAT L SHLD
**SMT2:**
**MSTAT:** NO       **HAND:** R
**EDUC:** COLLEGE   **HISP:** N
**CITIZ:** UNITED STATES

[ Identifiers ]
**SSN#:** 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   **OLN:** MS 800551288
**FBI#:**               **SID#:**
**INS#:**               **DOC#:**

[ Emergency Contact / Employer / School ]
**NAME:** MARGARET JOHNSON
**ADDR:**
**EMER TEL:** (662) 227-1662
**EMPLOYER:** BARBER STYLIST
**EMPLOYER ADDR:**
**OCCUPATION:**   **EMPL#:** (000) 000-
STYLIST           0000

[ Intake / Booking ]
**OFF DATE:** 00/00/0000 - **Case#:** OTHER
**INTAKE DATE:** 11/26/2018   **TIME:** 04:38
**INTAKE #:** BK0000076099 - 001
**ARRESTING AGENCY:** MADISON PD
**ARR OFF:** SANDERS
**INTAKE OFF:** BASSETT, CHRISTIANA

[ Bond Information ]
**WRITTEN BOND:** $ .00
**CASH BOND:** $ .00

| No. | STATUTE | | FEL/MIS DESCRIPTION | WHICH COURT | BOND AMT | REFERENCE# |
|-----|---------|---|---------------------|-------------|----------|------------|
| 1 | N 41-29-139(a) (1) | F | C/S SELL, TRADE, BARTER DRUGS Court Date: 00/00/0000 POSS. WITH INTENT | MADISON | | |

EXHIBIT A

Housing Movement History

# Housing Movement History

Inmate ID#: BK0000076099-001    Intake Date: **11/26/2018**   Time: **04:38**    Race: B Sex: F

Name: Last: **BROWN**    First: **LANEKIA**    Middle: **MICHELLE**    Date of Birth: **6/18/1981**

| Seq# | Date | Time | Housing | Inmate Type | Reason Transferred | Classification | Employee Na |
|---|---|---|---|---|---|---|---|
| 000000001 | 11/26/2018 | 4:38 | PROCESSING IN B | PRE-SENTENCED | PROCESSING IN BOOKING | | BASSETT, CHRISTIAN/ |
| 000000002 | 11/26/2018 | 4:54 | M-CF-OFR-L | PRE-SENTENCED | PRE-CLASSIFICATION | NON-VIOLENT/FEL | BASSETT, CHRISTIAN/ |
| 000000003 | 11/26/2018 | 6:01 | M-A5-005-L | PRE-SENTENCED | FIRST ASSIGNMENT | NON-VIOLENT/FEL | GREEN, PATRISHEA |
| 000000004 | 12/22/2018 | 19:51 | M-A5-005-L | PRE-SENTENCED | FIRST ASSIGNMENT | NON-VIOLENT/FEL | PATE, RAVEI |
| 000000005 | 12/22/2018 | 19:52 | M-MH-OMH-L | PRE-SENTENCED | MEDICAL REASON | P/C LEVEL II | PATE, RAVEI |
| 000000006 | 12/22/2018 | 20:42 | M-MH-OMH-L | PRE-SENTENCED | MEDICAL REASON | P/C LEVEL II | MOORE, HUNT |

## Initial Medical Assessment

| Inmate ID #: | Name: | Date of Intake: | Date of Birth: | Race: | Sex: |
|---|---|---|---|---|---|
| BK0000076099 - 001 | BROWN, MICHELLE LANEKIA | 11/26/2018 | 6/18/1981 | B | F |

Custody Agency:  **MADISON PD**

1. Have you been recently hospitalized/under doctor care?   N

2. Do you currently take medications?   N

3. Are you allergic to any medications?   N

4. Have you fainted or experienced a head injury?   N

5. Do you have a medical history of?

a. Mental Illness?   N

b. STD?   N     c. Suicidal Tendencies?   N
d. Are you feeling suicidal right now? *   N

6. Do you currently have

a. Artificial limbs/dentures?   Y     b. Back Problems?  Y
c. Diabetes?   N     d. Hepatitis?   N   What Type?
e. TB?   N

Explain?

7. Any other medical problems?   Y
**RODS AND SCREWS IN BACK**

8. Do you use drugs or alcohol?   Y
**MARIJUANA OCASSIONALLY**

9. Do you have any food or dietary restrictions?   Y
**TOMATOES**

Inmate Signature _____   Y
**TOMATOES**

Intake Program - Initial Processing of Inmate

# Intake Form

Name: BROWN, LANEKIA  MICHELLE        Inmate ID#: BK0000076099 - 001

| Intake Date (MMDDYYYY): | Intake Time: | Reason for Intake: | Arresting Agency: | |
|---|---|---|---|---|
| 11/26/2018 | 04:38 | CRIMINAL ARREST | MADISON PD | |

| Outside Agency Officer: | Custody Agency: | Case/Incident#: | BOP#/FBI: | SPBI #: |
|---|---|---|---|---|
| SANDERS | MADISON PD | OTHER | | |

| Caution/Alerts:...#1 | Caution/Alerts:...#2: | Caution/Alerts:...#3: | Gang Nar |
|---|---|---|---|
| PREGNANT | | | |

| Last Name: | Suffix: | First Name: | Middle: |
|---|---|---|---|
| BROWN | | LANEKIA | MICHELLE |

| House # | Dir: | Name of Street: | Apt/Floor #: | City: |
|---|---|---|---|---|
| 139 | | GOODWIN DRIVE | | GRENADA |

| Zip Code: | Telephone #: | Employer Name: | Employer Addres |
|---|---|---|---|
| 38901 . 0000 | 66200 - 307 - 6470 | BARBER STYLIST | |

| Occupation: | Driver's License (FL 123466): | Location Arrested: |
|---|---|---|
| STYLIST | MS 800551288 | I55 N NEAR 110 |

| Race: | Sex: | Height: | Weight: | Hispanic/Eth: | Citiz |
|---|---|---|---|---|---|
| BLACK | FEMALE | 509 | 204 | NO | UNI |

| Date of Birth (MMDDYYYY): | Age: | Place of Birth - City: | State/Country |
|---|---|---|---|
| 06181981 | 037 | GRENADA | MISSISSIPPI |

| Complexion: | Build: | Hair: | Facial Hair: | Eyes: | Speed |
|---|---|---|---|---|---|
| MEDIUM BROWN | MEDIUM | BLACK | NOT APPLICABLE | BROWN | SPEI |

| Married Y/N: | Mil Y/N: | Edu Level: | Religion: | L/R Hand: |
|---|---|---|---|---|
| NO | NO | COLLEGE GRAD | BAPTIST | RIGHT |

Comments/Remarks:

Intake Officer: 588

Save    Cancel/Go Back



# Standard Operating Procedures

**Date:** 1 January 2001

**Last Update:** 22 November 2002

Date Last Reviewed: 16 February 2011

**Subject:** Surveillance of Receiving Cells

**SOP No.:** 2.10

## Policy:

The purpose of this policy is to provide for more frequent observation of inmates placed in receiving cells during intake processing.

## Procedure:

1. <u>Receiving for Processing:</u> Upon completion of the booking process, the inmate will be placed in a Pre-Classification Cell in an effort to make arrangement for a sufficient bond for a period no longer than twenty-four (24) hours. Arrestees will be frisked searched and placed in a Receiving Cell for safekeeping until they can be safely processed.

2. <u>Frequency of Surveillance:</u> Hall officers assigned to A-Hall and C-Hall should visually observe the Receiving Cell and Pre-Classification Cells as often as possible consistent with the workload and available personnel, but at least every thirty (30) minutes.

3. <u>Suicidal and Violent Inmates:</u> If the staff member suspects that an inmate is violent, they will initiate the intake processing as soon as possible and initiate classification procedures will be accomplished as soon as possible. If the inmate/arrestee becomes violent, house the inmate/arrestee in a cell separate from the other inmates/arrestee for his or her protection until such time as the inmate/arrestee calms down and can safely be processed. If the inmate/arrestee appears suicidal Medical staff will be notified and will check the inmate. All processing is to be completed as soon as possible. Staff will place the inmate on suicide watch and procedures outlined in **SOP 2.02**.

1

Collective EXHIBIT B

Custody level I.  The sign shall be taped to the cell door, visible to officers walking along the hall.  The Protective Custody roster shall be taped below the sign on the door.  The Protective Custody roster shall be removed at the end of each shift by the shift supervisor.  The Protective Custody sign shall remain until removed at the request of Medical Personnel, the Warden, or the Jail Administrator.

4.    Medical staff must approve the removal of any inmate assigned to Protective Custody, if the custody status was based upon medical reasons.  Once medical notifies detention staff that the inmate may be reassigned to general population, the supervisor must note in the Booking Pass-Down Log that the inmate has been returned to general population.  Any supervisor failing to accomplish this shall face disciplinary action.

# MADISON COUNTY DETENTION CENTER

## PROTECTIVE CUSTODY- LEVEL- I -II -III

INMATE:_____    EVERY _____ MINUTES

DATE:_____    SHIFT:_____    CELL:_____

| TIME CHECKED | OFFICER | TIME CHECKED | OFFICER |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



# Standard Operating Procedures

**Date:**  1 January 2001

**Last Update:**

**Subject:**  Medical Services For Inmates

**SOP No.:**  6.01

---

### Policy:

It will be the policy of the Madison County Detention Center to provide medical services to treat any illnesses, disease, infirmity, or ailment from which an inmate may suffer.  Diligent effort will be maintained to see that all judicially mandated standards for medical care of inmates be upheld, in strict accordance to state and federal law.

### Procedure:

1.  <u>Contractual Agreements:</u>  As an "interested party" to the agreement contracted between the medical staff and the Board of Supervisors for Madison County, the Sheriff will be continually advised as to the terms and conditions of such an agreement as presented to the Sheriff's Office.  While the Sheriff's Office is neither involved in the negotiations of nor the restrictions set forth within the agreement, it is understood, that final authority in health care for inmates rests with the Sheriff of Madison County, who may for just cause expel the contracted service holder and seek such remedies deemed necessary to provide adequate care and service.

BY ORDER OF:

_____

Jail Administrator

1



**Madison County
Detention Center**

# Standard Operating Procedures

**Date:**   1 January 2001

**Last Update:**

**Subject:**   Preliminary Health Screening

**SOP No.:**   6.03

## Policy:

Each newly admitted inmate shall undergo a preliminary health screening by the booking officer. Such a screening is designed to assist the medical staff by hopefully identifying those inmates whose condition may represent a threat to the health of the facility staff, other inmates, or a threat to the health of the inmate themselves.

## Procedure:

1.   Interview: The Booking Officer in Booking shall interview the inmate concerning his/her medical history and current condition. This is considered part of the booking procedure and the officer is held accountable to properly complete this screening or notify his/her supervisor of any problem with doing so.

2.   Recording: The inmate's answers to questions will be recorded on the computerized booking system.

3.   Observation: The Booking Officer will observe the inmate during the booking process.

4.   Records: The Booking Officer shall print the medical history from the computerized booking system. The printout shall be forwarded to the medical staff

5.   Referral: If after the screening there is reason to suspect that the inmate suffers from any communicable disease or condition which may require further examination, the Booking Officer will:

   a.   Place the inmate in a holding cell (if all holding cells are occupied, a segregation cell will be used),

   b.   Notify the ranking officer on duty and call for the medical staff to examine the inmate immediately,

   c.   The Booking Officer will not readily accept custody of the inmate, if it is immediately recognized that the individual has a pressing need of medical attention. A superior officer is to be contacted and the medical staff called to make a preliminary examination prior to accepting the inmate.

   d.   If after examination it is determined that the inmate should receive medical attention prior to booking, the superior officer will request that the arresting officer transport the subject to the nearest medical facility. Should the arresting officer decline to do so, Sheriff's personnel will make arrangements have the inmate taken to a medical facility treatment. No booking is to be refused based upon the arresting officer's decline to take the subject for treatment.

1

6. **Recording:** Any incident, which results in an inmate being accepted that needs medical attention and/or is transported for treatment prior to booking, must be brought to the immediate attention of the Jail Administrator, with a written report to follow.

7. **Medical Records:** Any medical records received by the admitting officer will be copied and forwarded to the medical staff, with the copy placed in the inmate's file.

BY ORDER OF:

_____

Jail Administrator

**Madison County
Detention Center**

# Standard Operating Procedures

**Date:**    August 9, 2021

**Last Update:**  1 February 2002

**Subject:**    Emergency Medical Care (Transport)

**SOP No.:**    6.04(2)

## Policy:

The purpose of this policy is to establish procedure for providing emergency medical care for inmates.

## Procedure:

1.    <u>Determination of Emergency Situation by Detention Officer:</u>  A detention officer who observes an emergency situation or is notified of an emergency situation here at MCDC shall have the inmate **immediately** moved to medical for evaluation. If the inmate is unable to be moved at the time or the risk of moving the inmate could cause further harm, the officer will immediately call for medical staff to come to the location of the inmate. The medical staff will be responsible for making the decision if emergency transportation needs to be summoned to MCDC for transport of the inmate. If no medical staff is available at MCDC to make this determination, the detention officer is to summon emergency transportation and assistance directly as soon as possible.

2.    <u>Diagnosis and Treatment:</u>  Recommendations of the medical staff in regard to emergency situations regarding the treatment of inmates will be adhered to and followed to the extent that security precautions are not jeopardized to the point that the inmate may escape, injure another, or injure him/herself.  If diagnosis and required treatment must be obtained outside this facility the inmate will be transported immediately to that facility designated for treatment.

3.    <u>Transportation:</u>  When recommended or directed by the medical staff, an inmate may be transported by ambulance.  The shift supervisor will assign a detention officer for security.  The inmate is to be personally accompanied, from within the transporting vehicle, by the detention officer.  Supervisors must authorize all ambulance requests.  The Major or Captain must be notified of all ambulance calls.  With the approval and recommendation of the medical staff, inmates may be transported by use of a Sheriff's vehicle only if the urgency of the situation would deem it beneficial to the survival of the ill or injured inmate.  The Shift Supervisor will notify Communications when requesting escort services for the inmate in question.

4.    <u>Services Rendered:</u>  Emergency transportation and medical services will be provided to every inmate in need of such to the extent of the restrictions of the contractual agreement between the medical staff and the Board of Supervisors for Madison County.

5.    <u>Restraints:</u>  Use of appropriate restraining devices is mandatory in all cases in so far as they do not aggravate or compound any existing medical problems.  Those devices which may be used without interfering with the medical condition of the inmate/patient that maintain the level of security required for safe transport will be used by an escorting officer(s).

1

6.  <u>Medical Registration Forms:</u>  The detention officer shall request the inmate to sign all medical forms.  If the inmate refuses, the officer may sign for the sheriff's office.  The detention officer shall request medical bills be directed to the one of the following facilities:

| | | |
|---|---|---|
| a. | State and Local Inmates | Madison County Sheriff's Office |
| b. | Federal Inmates (other than ones below) | U.S. Marshall's Service, Jackson |
| c. | Bureau of Prisons Inmates | Federal Bureau of Prisons |

**Madison County
Detention Center**

# Standard Operating Procedures

**Date:**    1 January 2001

**Last Update:** 6 May 2002

**Subject:**    Daily Medical Complaints and Other Non-Emergency Medical Care Procedures

**SOP No.:**    6.05

---

## Policy:

The purpose of this policy is to establish procedure for managing inmate daily medical complaints for non-emergency care.

## Procedure:

1.  <u>Services Rendered:</u>  Daily medical care and treatment will be provided to every inmate in need of such to the extent of the existing contract.  However, no inmate will be denied such care or treatment nor be forced to bear the expense of such medical care, if such is required for treatment while in the custody of the Madison County Detention Center.

    **EXCEPTIONS:** Expenses or certain types of expenses for medical care and treatment diagnosed as "billed to the patient" within the contract, that must be paid by the inmate or the inmate's insurance carrier, are subject to the provisions of that contractual agreement. However, lack of insurance coverage or inability to pay, will not immediately exclude any inmate from these services if prescribed for by a duly licensed physician or practitioner on the medical staff.

2.  <u>Health Services Request Form:</u>  The Medical Service Provider shall supply health service request forms for distribution in the detention center.  Detention Officers shall distribute the forms to inmates as needed.  Medical Service Provider Employees shall pick up the sick call request forms each weekday.  Detention Officers are prohibited from picking up medical request forms due to confidentiality laws.

1

BOOK 2018 PAGE 2360

HEALTH CARE SERVICES AGREEMENT

between

MISSISSIPPI CORRECTIONAL SERVICES, LLC

and

MADISON COUNTY, MISSISSIPPI

October 1, 2018

23F271103

**EXHIBIT**

E

APPROVED
BY MADISON COUNTY
BOARD OF SUPERVISORS
Date 9/27/18
Ronny Lott, Chancery Clerk
By _____ D.C.

EXHIBIT C

BOOK 2 0 1 8 PAGE 2 3 6 1

## TABLE OF CONTENTS

Page

ARTICLE 1: RETENTION AND SCOPE OF SERVICES ................................................ 1
    1.1    Engagement of Provider ................................................................ 1
    1.2    Independent Contractor Status ..................................................... 1
    1.3    Services Beyond the Scope of the Agreement .............................. 1

ARTICLE 2: PROVIDER DELIVERABLES ................................................................ 2
    2.1    On-Site Services ........................................................................... 2
    2.2    Medical Records ........................................................................... 3
    2.3    Claim Administration Services ..................................................... 3
    2.4    Reports to County ........................................................................ 4
    2.5    Meetings ....................................................................................... 4
    2.6    Services Not Included in Provider Deliverables .......................... 4

ARTICLE 3: COUNTY DELIVERABLES ................................................................... 6
    3.1    Clinic and Office Space ............................................................... 6
    3.2    Delivery of Possession ................................................................. 6
    3.3    Office Equipment ......................................................................... 6
    3.4    Medical Supplies, Instruments and Equipment Over $500 .......... 6
    3.5    Transportation Services ................................................................ 6
    3.6    Security ......................................................................................... 6
    3.7    Inmate Medical Records and Information ..................................... 7
    3.8    Staff Screening ............................................................................. 7
    3.9    Non-medical Care of Inmates ....................................................... 7

ARTICLE 4: COMPENSATION ................................................................................ 7
    4.1    Base Compensation ...................................................................... 7
    4.2    Changes in Inmate Population ...................................................... 7

ARTICLE 5: PERSONNEL ...................................................................................... 7
    5.1    Staffing ......................................................................................... 7
    5.2    Licensure, Certification and Registration of Personnel ............... 8
    5.3    Satisfaction with Personnel .......................................................... 8
    5.4    Use of Inmates in the Provision of Health Care Services ............ 8
    5.5    Subcontracting; Delegation .......................................................... 8

ARTICLE 6: RECORDS AND INFORMATION ........................................................... 9
    6.1    Provider's Records and Information ............................................. 9
    6.2    County's Records and Information ................................................ 9

ARTICLE 7: TERM AND TERMINATION .................................................................. 9
    7.1    Term ............................................................................................. 9
    7.2    Termination .................................................................................. 9
    7.3    Transition ..................................................................................... 9
    7.4    Responsibility for Inmate Health Care ...................................... 10

ARTICLE 8: MISCELLANEOUS ............................................................................ 10
    8.1    Notices ....................................................................................... 10

23F271103

i

BOOK 2 0 1 8 PAGE 2 3 6 2

| | | |
|---|---|---|
| 8.2 | Choice of Law | 11 |
| 8.3 | Designation of Forum | 11 |
| 8.4 | Mediation | 11 |
| 8.5 | Entire Agreement | 12 |
| 8.6 | Amendments | 12 |
| 8.7 | Waivers | 12 |
| 8.8 | Severability | 12 |
| 8.9 | Third-Party Beneficiaries | 12 |
| 8.10 | Liaison | 12 |
| 8.11 | Time of Essence; Force Majeure | 12 |
| 8.12 | Binding Effect | Error! Bookmark not defined. |
| 8.13 | Cumulative Powers | 12 |
| 8.14 | Non-Assignment | 13 |
| 8.15 | Counterparts | 13 |

23F271103

ii

BOOK 2018 PAGE 2363

## HEALTH CARE SERVICES AGREEMENT

This Health Care Services Agreement (the "Agreement") dated September 27, 2018, is between **MADISON COUNTY, MISSISSIPPI**, a political subdivision of the State of Mississippi ("County") acting by and through its Board of Supervisors, and **MISSISSIPPI CORRECTIONAL SERVICES, LLC**, a Mississippi limited liability company ("Provider"). County and Provider may be individually referred to as a "Party" and jointly referred to as the "Parties."

The County desires to provide health care services to individuals ("Inmates") in the care, custody, and control of the Sheriff of the County ("Sheriff") incarcerated at the Madison County Detention Center located at 2941 Highway 51, Canton, MS 39046 (the "Facility").

Provider has specialized training, experience, and qualifications to provide health care services to Inmates at the Facility in accordance with all applicable local, state, and federal laws and regulations (collectively, "Applicable Law") and the American Medical Association ("AMA"). In addition, through an affiliate, Provider has the capability to provide off-site medical claim administrative services regarding Inmates.

The Parties desire to enter into this Agreement under which Provider will provide (i) health care services as described herein to Inmates at the Facility and (ii) off-site medical claim administrative services regarding Inmates.

Therefore, the Parties agree as follows:

### ARTICLE 1: RETENTION AND SCOPE OF SERVICES

**1.1    Engagement of Provider.** The County hereby engages Provider to provide the On-Site Services (defined below) at the Facility and Claim Administration Services (defined below) off-site, and Provider hereby accepts such appointment and agrees to perform On-Site Services at the Facility and Claim Administration Services off-site during the Term (defined below).

**1.2    Independent Contractor Status.** The Parties acknowledge that Provider is an independent contractor engaged to provide Services at the Facility and Claim Administration Services off-site. Nothing in this Agreement is intended nor shall be construed to create an agency relationship, an employment relationship, or a joint venture relationship between the Parties.

**1.3    Services Beyond the Scope of the Agreement.** Both Parties acknowledge there are certain occurrences, both beyond the control and within the control of the Parties, that may result in health care expenses outside the scope of the normal operation of correctional facilities and, therefore, outside the contemplated scope of On-Site Services under this Agreement. While both Parties will act in good faith and endeavor to reduce the possibility of such occurrences, in the unlikely event of an occurrence such as an Act of God, explosion, or any other catastrophic event, or an event caused by action or inaction of the County or Sheriff or their employees,

23F271103

BOOK 2 0 1 8 PAGE 2 3 6 4

agents or contractors, that results in medical care for Inmates, Facility staff, visitors, or contractors, Provider shall not be responsible for costs attributable to such catastrophic event and all such costs shall be borne by the County. Notwithstanding the above, Provider shall be responsible for medical costs associated with such an event only if such an event was caused solely by Provider.

## ARTICLE 2: PROVIDER DELIVERABLES

2.1    On-Site Services. Provider shall provide the following services at the Facility, except those identified in Section 2.5 below.

(a)    Health Care Services. Provider will deliver the following reasonably necessary health care services commencing upon the booking and commitment of an Inmate to the Facility. The following health care services ("Health Care Services") shall be conducted on-site, at the Facility, using licensed, certified and professionally trained nurses and physicians on a 24-hour-a-day, seven days-a-week basis unless otherwise provided herein.

(i)    Primary Care. Provider will provide Inmate admission exams, health assessments, physician sick calls, health screenings, physical assessments, preventative and maintenance care, and nursing care. Physical assessments will be completed as soon as practicable, but in no event longer than 14 days from intake for an adult Inmate, or seven days from intake for a juvenile Inmate, absent extraordinary circumstances.

(ii)    Medication. Provider will prescribe, dispense, and administer medications for Inmates in compliance with Applicable Law. Medications will be dispensed under the supervision of duly authorized and appropriately licensed or certified Provider staff member. Provider will document receipt and disbursement of all medications in a manner reasonably acceptable to the County. The County will be responsible for the cost of all medications.

(iii)    Medical Supplies and Equipment. Provider will supply medical supplies (e.g., alcohol prep pads, syringes) and equipment (e.g., thermometers, scales, pulse ox tests) required to administer Health Care Services, which have a unit cost of $500 or less. This does not include office and paper supplies.

(iv)    Routine X-ray and Laboratory Services. Provider will arrange and deliver all routine laboratory and x-ray services for Inmates. To the extent any required laboratory or x-ray services cannot be rendered at the Facility, Provider will make appropriate off-site arrangements for same. The County will be responsible for the cost of all off-site services, including transportation.

(b)    Education Services. Provider will provide health education services to Inmates (collectively, the "Education Services"); provided, however, any such services beyond a normal Provider-patient setting is subject to written approval by the County.

(c)    Emergency Services. Provider will deliver on-site emergency medical care as medically necessary to Inmates ("Emergency Care"). When medically necessary

23F271103

2

BOOK 2018 PAGE 2365

Provider will arrange emergency ambulance transportation of Inmates, the cost of which will be billed directly to County by the ambulance provider. Otherwise, transportation is controlled by Section 3.6 of this Agreement.

(d)    First Aid for Correctional Personnel. Provider shall deliver on-site first-aid medical services to correctional personnel ("Correctional Personnel First Aid"). If an emergency occurs, the County will call appropriate emergency providers. Services provided under this Section 2.1(d) are limited to triage-type evaluation and medical stabilization pending the arrival of emergency medical providers. Provider is not responsible for delivering Health Care Services to Correctional Personnel. Provider shall complete an injury report, in a form suitable to the County, for every event of service rendered under this Section 2.1(d).

(e)    Medical Waste. Provider will remove and properly dispose of all medical waste material generated while performing its duties under this Agreement in accordance with Applicable Law ("Medical Waste Services" and, together with Health Care Services, Education Services, Emergency Care, and Correctional Personnel First Aid, the "On-Site Services").

2.2    Medical Records. Provider will maintain and retain complete, standardized, and accurate medical records for Inmates in accordance with Applicable Law and County's policies and procedures communicated in writing to Provider. Provider will supply all medical records, forms, jackets and other materials necessary to maintain the medical records. Such medical records will be kept separately from an Inmate's confinement record. A complete legible copy of the medical records will be available at all times to County and the Sheriff. Provider will comply with Applicable Law and County policies regarding access by Inmates and Facility staff to medical records. Provider will not release information contained in the medical records except in accordance with County's policies, Applicable Law or court order, and with timely notification to the County's legal counsel. All medical records of Inmates are considered property of County, and at the expiration or termination of this Agreement, Provider will deliver all Inmate medical records to the Sheriff. County will allow Provider reasonable continuous access to all medical records after the expiration or termination of this Agreement for the purposes of defending litigation. Provider is not responsible for the condition of medical records taken before the beginning of the Term.

2.3    Claim Administration Services. Provider will provide the following off-site administrative services concerning Inmate-related medical claims ("Claim Administration Services") that are not within the scope of On-Site Services:

(a)    pre-certification and case management through a licensed third-party administrator;

(b)    eligibility and verification (Inmate eligibility will be verified with County personnel at the time a claim is received and/or at the time of pre-certification; ID cards will be issued to Sheriff personnel to present to hospital at time of inmate admission; Inmates can be separated into groups (ie: County, City, etc.) if other entities need to be billed for cost of Inmates);

23F271103

3

BOOK 3018 PAGE 2366

(c) claims adjudication and payment (this will be designed to fit the County's needs (ie: weekly, monthly, etc.); detailed report will be issued to the County to verify inmate eligibility prior to issuing funding request; flexibility to issue checks directly out of a County bank account or use a Provider bank account; County will receive funding requests and it will either fund the funding account or issue check to Provider for amount of the funding request; and checks will be mailed within 24 hours of funding); and

(d) reporting (customized reporting will be provided to County detailing: provider utilization, billed charges, savings realized and any other data that would be helpful to the County; the cost can be broken down my Inmate classification (County, City, etc.));

2.4 **Reports to County**. Provider shall deliver to County, on dates and in forms mutually acceptable to Provider and County, reports relating to On-Site Services rendered as requested.

2.5 **Meetings**. The Medical Director (defined below) will meet quarterly with the Sheriff and Facility command staff, as requested. Such quarterly meetings will include reviewing quality assurance reports, expenses of Provider and County and any other matters related to this Agreement.

2.6 **Services Not Included in Provider Deliverables**. Both Parties acknowledge there will be medically related services in addition to the On-Site Services that incur costs. Provider is not responsible for costs of any medical or other services not specifically enumerated in **Section 2.1**. If medical services in addition to On-Site Services (collectively, "**Additional Services**") are required in the medical judgment of a physician or other authorized personnel provided by Provider, the cost of Additional Services is not included in the Base Compensation (defined below) and will be borne by and billed directly to the County. The following services are not included in On-Site Services:

(a) **Specialty Services**. Provider is not responsible for the provision or costs of any Specialty Services. "**Specialty Services**" include medical services requiring physicians to be licensed in a specialty such as obstetrics, gynecology, dermatology, or any other specialized field of medicine. Provider will identify Inmates requiring Specialty Services and notify the County promptly. Provider will use reasonable best efforts to provide the County access to a physician specialty network through which the County may obtain a reduction in the standard fees of the covered specialists.

(e) **Elective Medical Care**. "**Elective Medical Care**" is medical care which, if not provided, would not, in the opinion of Provider's Medical Director, cause the Inmate's health to materially deteriorate or cause material harm to the Inmate's wellbeing. Provider is not responsible for the delivery or cost of any Elective Medical Care to Inmates. Decisions of Provider concerning Elective Medical Care shall be consistent with applicable AMA standards. If an Inmate requires Elective Medical Care, the County (or, if applicable, the Inmate) shall be responsible for all costs and the County will indemnify Provider from same.

(f) **Injuries Incurred Prior to Incarceration**. Provider is not responsible for the cost of providing On-Site Services to any Inmate prior to formal booking and commitment

23F271103

4

BOOK 2018 PAGE 2367

to the Facility. Provider is not responsible for the cost of On-Site Services necessary to medically stabilize any arrested person presented at booking with a life-threatening injury or illness or in immediate need of emergency medical care. Once an Inmate has been medically stabilized and committed to the Facility, Provider shall, commencing at that point, be financially responsible for the cost of On-Site Services regardless of the nature of the illness or injury or whether or not the illness or injury occurred prior or subsequent to incarceration at the Facility. An Inmate will be considered medically stabilized when the Inmate's medical condition no longer requires immediate emergency medical care or outside hospitalization so that the Inmate may reasonably be housed inside the Facility in a normal fashion.

(g)    Infants Born to Inmates. Provider is not responsible for On-Site Services or costs regarding medical care for any infants born to Inmates. Provider will provide On-Site Services to pregnant Inmates up to, through, and after the birth process, but any medical care provided to an infant following birth, other than those services that may be delivered in the Facility prior to transport to a hospital, are not Provider's responsibility, financial or otherwise. Provider is not required to perform or furnish abortions of any kind and is not responsible for any costs of same.

(h)    Inmates Outside the Facility. Heath Care Services are intended only for Inmates in actual physical custody of the Facility. Provider is not responsible for, financially or otherwise, for furnishing On-Site Services to Inmates on any sort of temporary release, including, but not limited to, Inmates temporarily released to attend funerals or deal with other family emergencies, Inmates on escape status, and Inmates on pass, parole or supervised custody who do not sleep in the Facility at night, and such Inmates are not included in the population count. Inmates in the physical custody of other police or other penal jurisdictions at the request of County are likewise excluded from the population count, and Provider is not responsible for the delivery or cost of On-Site Services to such Inmates. Once an Inmate has been recommitted to the Facility, Provider is responsible for providing On-Site Services for such Inmate, regardless of whether the condition or injury requiring such services occurred during the temporary release.

(i)    Inmates on Work Release. Notwithstanding any other provisions of this Agreement to the contrary: (i) Inmates assigned to non-County-supervised work release are personally responsible for all costs of any medical services performed by providers other than Provider, when the illness or injury is caused by or results directly or indirectly from the work being performed, or when such illness or injury is treated while the Inmate is on work release; and (ii) Provider is responsible for any Inmate who, while incarcerated, is assigned to perform work for the County or one of its agencies, whether inside or outside of the Facility, on the same terms as it would be responsible for any Inmate physically housed in the Facility.

(j)    Inmates from Other Jurisdictions. Detainees from other counties, state, or federal agencies may be housed at the Facility. Such detainees are referred to as "Out of County Inmates." Provider is responsible for delivering On-Site Services to Out of County Inmates; provided, however, the costs of such On-Site Services (which are in addition to the Base Compensation) shall be paid by the agency responsible for the Out of County Inmates at the Per Diem rate provided for in Section 4.2.

23F271103                                    5

BOOK 2018 PAGE 2368

## ARTICLE 3: COUNTY DELIVERABLES

3.1    Clinic and Office Space. The County will furnish to Provider at the Facility reasonable and adequate medical clinic and office space and facilities, local and long-distance telephone service, internet data service, and all utilities for such space and facilities. The County will provide necessary maintenance, repairs and housekeeping for such space and facilities.

3.2    Delivery of Possession. At the beginning of the Term (defined below) the County will deliver to Provider, possession and control of the office and medical space and facilities as well as all County medical and office equipment and supplies in place at the Facility. The Parties will jointly inventory all medical and office equipment and supplies present at that time. At the termination of this or any subsequent Agreement, Provider will return to County's possession and control all medical and office equipment and supplies, in working order, reasonable wear and tear excepted, which were in place at the Facility prior to the commencement of this Agreement, as documented in the joint inventory.

3.3    Office Equipment. The County will furnish Provider with reasonable and adequate office equipment and office supplies such as copier, fax, computers and telephone equipment and service as required for the administrative operations of the medical unit. The County will provide necessary maintenance, repairs and supplies for such office equipment, Inventory and Supplies.

3.4    Medical Supplies, Instruments and Equipment Over $500. If medical supplies, instruments and equipment in excess of $500 per unit cost are required to deliver On-Site Services, County shall bear the cost of such medical supplies, instruments and equipment. All loss, maintenance and repair of equipment and instruments shall be the expense of Provider, unless the loss or need for maintenance or repair resulted from the negligent or intentional acts of a County employee, agent or Inmate. At the end of the Term, or upon termination, County shall be entitled to purchase Provider's equipment and instruments at the Facility at its cost subject to a mutually agreed depreciation schedule.

3.5    Transportation Services. County shall be responsible for the cost of all emergent and non-emergent transportation services. Except as described in Section 2.1(c) above, to the extent any Inmate requires off-site health care treatment, upon prior request by Provider, County shall schedule and provide the necessary transportation.

3.6    Security. Adequate security services are essential and necessary for the safety of Provider's employees, agents, and/or subcontractors as well as for the security of Inmates and the County's staff, consistent with the correctional setting. County shall provide security sufficient to enable Provider, its employees, agents and/or subcontractors to safely provide On-Site Services. The security and safety of Provider's employees, agents, and/or subcontractors is a condition to Provider's obligation to deliver On-Site Services in a routine, timely and proper fashion. County shall provide prompt and timely security necessary and appropriate for transportation of any Inmate between the Facility and any other location, and at any other location.

23P271103

6

BOOK 0 18 PAGE 369

**3.7    Inmate Medical Records and Information.** Subject to Applicable Law, County will provide Provider with medical records and information pertaining to Inmates that Provider and County mutually identify as reasonably necessary for Provider to adequately perform its obligations hereunder.

**3.8    Staff Screening.** County shall screen Provider's proposed staff to ensure they will not constitute a security risk. County will have final approval of Provider's employees regarding security/background clearance.

**3.9    Non-medical Care of Inmates.** County shall provide for all other personal needs (non-medical) of Inmates while in the Facility including, but not limited to: daily housekeeping services, dietary services, building maintenance services, personal hygiene supplies and services, and linen supplies.

## ARTICLE 4:  COMPENSATION

**4.1    Base Compensation.** County will pay to Provider the annual base price of $792,000 in equal monthly installments of $66,000 ("Base Compensation") during the first year of this Agreement for On-Site Services and Claim Administration Services. Provider will bill County 30 days prior to the month in which services are to be rendered. County agrees to pay Provider on the first day of each month. If this Agreement commences or terminates on a date other than the first or last day of any calendar month, compensation to Provider will be pro-rated accordingly for the shortened month. Base Compensation for succeeding 12-month periods (after the first 12 months of this Agreement) shall increase in the same proportion as the increase in the Consumer Price Index Wage Earners and Clerical Workers (CPI-W) Medical Care Component (MCC) for the Southern Region of the United States from the day immediately preceding the beginning of the Term to the last day of the first twelve-month Term or by 3%, whichever is less.

**4.2    Changes in Inmate Population.** Base Compensation is calculated based upon an average daily Inmate population per month of 500 ("Base Population"). If the monthly average daily population is greater than 500, then, in addition to the Base Compensation, County will pay Provider for that month a per diem rate of $5.00 per day ("Per Diem") per Inmate above the Base Population. On a monthly basis, per the County's Average Daily Population Report, Provider will work with the County to reconcile any Per Diem adjustments. Provider shall make Per Diem adjustments to the County's invoice retroactively. If the monthly average daily Inmate population exceeds 550 for a consecutive three-month period, Provider and County will negotiate in good faith additional compensation for Provider.

## ARTICLE 5:  PERSONNEL

**5.1    Staffing.** Provider will provide medical, technical, and support personnel reasonably necessary for the rendering of On-Site Services. Such personnel will include the following:

(a)    Medical Director. Provider's Medical Director ("Medical Director") will be telephonically available at all times to the administrative staff contacts at County and the Facility. The Medical Director's home and cellular telephone numbers will be provided.

23F271103

7

BOOK 2 PAGE 18 PAGE 2370

(k)  Physician/Nurse Practitioner. A licensed physician or a licensed nurse practitioner working in consultation with and under the supervision of a licensed physician will visit the Facility at least once a week for such time period as is necessary to see all Inmates in need of physician/nurse practitioner care. When a physician/nurse practitioner is not at the Facility, one will be available on call.

(l)  Licensed Practical Nurse. Approximately 224 hours Licensed Practical Nurse ("LPN") per week.

(m)  Registered Nurse. 40 hours Registered Nurse coverage (Site Administrator) per week (will supervise the Facility).

5.2  Licensure, Certification and Registration of Personnel. Provider's personnel rendering On-Site Services will be appropriately licensed, certified or registered. Provider will obtain credentials for and maintain copies of all continuing medical education and licensure requirements for its personnel. At a minimum, Provider's personnel will:

- comply with Affordable Care Act (ACA), and the National Commission on Correctional Health Care (NCCHC) guidelines;
- be licensed, certified or registered in their respective areas of expertise as required by Applicable Law; and
- obtain required Occupational Safety Health Administration (OSHA), Health Insurance Portability and Accountability Act (HIPAA) and Blood Borne Pathogen training, certifications or licenses.

5.3  Satisfaction with Personnel. If County becomes dissatisfied with any personnel provided by Provider and provides written notice to Provider of reasonable grounds for such dissatisfaction, due to the nature of correctional services Provider will use reasonable best efforts to resolve the issue of concern. If not resolved satisfactorily to County, Provider will remove the individual in question. Should such become necessary, Provider will be allowed reasonable advance time to find an acceptable replacement.

5.4  Use of Inmates in the Provision of Health Care Services. Inmates will not be employed or otherwise engaged by Provider or County in rendering On-Site Services.

5.5  Subcontracting; Delegation. To render On-Site Services Provider is permitted to engage certain health care professionals as independent contractors rather than employees. County hereby consents to such subcontracting and delegation. Provider will not exercise control over the manner or means by which these independent contractors perform their professional medical duties; provided, however, Provider will exercise such administrative supervision as is necessary to ensure compliance with this Agreement. For each person performing duties related to Health Care Services as independent contractors of Provider, Provider will furnish County as and when requested proof of professional liability or medical malpractice insurance coverage of at least One Million Dollars ($1,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate. Provider is also permitted to subcontract the provision of Claim Administration Services to one or more qualified independent contractors and County hereby consents to such subcontracting and delegation.

23F271103

8

BOOK 2 0 1 8 PAGE 2 3 7 1

## ARTICLE 6: RECORDS AND INFORMATION

6.1    <u>Provider's Records and Information</u>. Provider will provide to County, at County's request, records, documents and other papers relating to direct delivery of On-Site Services to Inmates. County agrees that Provider's written operating policies, procedures and information are proprietary in nature and will remain the property of Provider and shall not be disclosed, used, distributed, copied or otherwise utilized by County or its contractors without prior written consent of Provider except as necessary to deliver On-Site Services under this Agreement, or as permitted or required by Applicable Law.

6.2    <u>County's Records and Information</u>. During the Term and for a reasonable period thereafter, County will provide to Provider, at Provider's request, County's records relating to provision of On-Site Services as reasonably requested by Provider or as are pertinent to the investigation or defense of any claim related to Provider's conduct. Consistent with Applicable Law, at Provider's request County will make available to Provider Inmate medical records maintained by County, hospitals and other outside health care providers involved in the care or treatment of Inmates (to the extent County has any access or control over such records). Any such information provided by County to Provider that County considers and designates as confidential shall be kept confidential by Provider and shall not, except as may be required by Applicable Law or court order, be released to any third party without the prior written approval of County.

## ARTICLE 7: TERM AND TERMINATION

7.1    <u>Term</u>. The term of this Agreement shall commence at 12:00 a.m. on October 1, 2018, and end at 12:00 a.m. on October 1, 2019 (the "<u>Term</u>"); provided, however, the Term shall be automatically extended for successive periods of one year.

7.2    <u>Termination</u>. This Agreement may be terminated prior to the expiration of the Term as follows:

(a)    <u>By Agreement</u>. This Agreement may be terminated on the terms and date as mutually agreed in writing by the Parties.

(b)    <u>Termination by Cancellation</u>. This Agreement may be terminated without cause by either Party upon 30 days' prior written notice to the other Party.

(c)    <u>Termination Upon Material Breach</u>. Either Party may terminate this Agreement upon written notice if, within 10 days after delivery of a notice of material breach, the breaching Party has not cured the material breach to the reasonable satisfaction of the non-breaching Party.

7.3    <u>Transition</u>. Prior to any expiration or termination of this Agreement, the Parties will negotiate and implement an orderly transition process. As to Claim Administration Services, upon any termination of this Agreement all pending unpaid Inmate medical claims, up to and including the termination date, will be returned to County and Provider's responsibilities regarding such returned claims shall cease upon the date of termination.

23F271103

BOOK 2018 PAGE 2372

7.4    <u>Responsibility for Inmate Health Care</u>. Upon expiration or termination of this Agreement, all responsibility for providing On-Site Services will immediately transfer from Provider to County.

ARTICLE 8: MISCELLANEOUS

8.1    <u>Notices</u>.

(a)    <u>Requirement of a Writing: Permitted Methods of Delivery</u>. Each Party giving or making any notice, request, demand or other communication (each, a "<u>Notice</u>") pursuant to this Agreement shall (a) give the Notice in writing; (ii) cause the Notice to be signed by an authorized representative; and (iii) use one of the following methods of delivery, each of which for purposes of this Agreement is a writing: (A) personal delivery; (B) Registered or Certified Mail, in each case, return receipt requested and postage prepaid; (C) nationally recognized overnight courier, with all fees prepaid; (D) facsimile; or (E) e-mail.

(b)    <u>Addressees and Addresses</u>. Each party giving a Notice shall address the Notice to the appropriate person at the receiving party (the "<u>Addressee</u>") at the address listed below or to another Addressee or at another address designated by a party in a Notice pursuant to this Section.

County:    Madison County Board of Supervisors
125 West North Street
Canton, MS 39046 (street)
P.O. Box 608
Canton, MS 39046 (mail)
Attn: President and County Administrator
Facsimile: (601) 855-5759
Email: sheila.jones@madison-co.com,
Shelton.vance@madison-co.com

With copies to:    Katie Bryant Snell, Esq.
Post Office Box 3007
Madison, MS 39130-3007 (mail)
741 Avignon Drive, Suite A
Ridgeland, MS 39157 (street)
Facsimile: (601) 460-9801
Email: katie@katiebryantsnell.com

Provider:    Mississippi Correctional Services
589 Northpark Drive
Ridgeland, MS 39157
Attn: Paul Millette, President and CEO
Facsimile: (601) 427-9020
Email: paul@mscorrectional.com

23F271103                                    10

BOOK 2 0 1 8 PAGE 2 3 7 3

With a copy to:   Young Wells Williams P.A.
P. O. Box 6005
Ridgeland, MS 39158-6005 (mail)
141 Township Avenue, Suite 300
Ridgeland, MS 39157 (street)
Attn: James H. Neeld, IV, Esq.
Facsimile: (601) 355-6136
Email: jneeld@youngwells.com

(c)   Effectiveness of a Notice. Except as provided elsewhere in this Agreement, a Notice is effective only if the Party giving or making the Notice has complied with subsections (a) and (b) and if the Addressee has received the Notice. A Notice is deemed to have been received as follows:

(i)   If a Notice is delivered in person, or sent by Registered or Certified Mail, or nationally recognized overnight courier, upon receipt as indicated by the date on the signed receipt.

(ii)   If a Notice is sent by facsimile, upon receipt by the party giving the Notice of an acknowledgment or transmission report generated by the machine from which the facsimile was sent indicating that the facsimile was sent in its entirety to the Addressee's facsimile number.

(iii)   If a Notice is sent by e-mail upon acknowledged receipt by recipient or recipient's email system.

(iv)   If the Addressee rejects or otherwise refuses to accept the Notice, or if the Notice cannot be delivered because of a change in address for which no Notice was given, then upon the rejection, refusal or inability to deliver.

(v)   Despite the other clauses of this subsection (c), if any Notice is received after 5:00 p.m. on a business day where the Addressee is located, or on a day that is not a business day where the Addressee is located, then the Notice is deemed received at 9:00 a.m. on the next business day where the Addressee is located.

8.2   Choice of Law. The laws of the State of Mississippi (without giving effect to its conflicts of law principles) govern all matters arising out of or relating to this Agreement, including, without limitation, its validity, interpretation, construction, performance, and enforcement.

8.3   Designation of Forum. Any Party bringing a legal action or proceeding against any other party arising out of or relating to this Agreement may bring the legal action or proceeding in the United States District Court for the Southern District of Mississippi or in any court of the State of Mississippi sitting in Madison County, Mississippi.

8.4   Mediation. The parties shall first try in good faith to settle by non-binding mediation any dispute arising out of or relating to this Agreement or its breach. The mediation

23F271103                                   11

BOOK 2018 PAGE 2374

is to be conducted and/or administered by a mediation service or mediator to be mutually selected by the Parties. If the mediation is unsuccessful, the parties may then resort to litigation or another dispute resolution procedure.

8.5    Entire Agreement. This Agreement constitutes the final agreement between the Parties. It is the complete and exclusive expression of the Parties' agreement on the matters contained in this Agreement. All prior and contemporaneous negotiations and agreements between the Parties on the matters contained in this Agreement are expressly merged into and superseded by this Agreement. The provisions of this Agreement may not be explained, supplemented or qualified through evidence of trade usage or a prior course of dealings. In entering into this Agreement, neither Party has relied upon any statement, representation, warranty or agreement of the other Party except for those expressly contained in this Agreement. There are no conditions precedent to the effectiveness of this Agreement, other than those expressly stated in this Agreement.

8.6    Amendments. The parties may amend this Agreement only by a written agreement of the parties that identifies itself as an amendment to this Agreement.

8.7    Waivers. The Parties may waive this Agreement only by a writing executed by the Party or Parties against whom the waiver is sought to be enforced. No failure or delay (i) in exercising any right or remedy, or (ii) in requiring the satisfaction of any condition, under this Agreement, and no act, omission or course of dealing between the Parties, operates as a waiver or estoppel of any right, remedy or condition. A waiver made in writing on one occasion is effective only in that instance and only for the purpose stated. A waiver once given is not to be construed as a waiver on any future occasion or against any other person.

8.8    Severability. If any provision of this Agreement is determined to be invalid, illegal or unenforceable, the remaining provisions of this Agreement remain in full force, if the essential terms and conditions of this Agreement for each Party remain valid, binding, and enforceable.

8.9    Third-Party Beneficiaries. This Agreement does not and is not intended to confer any rights or remedies upon any person or entity other than the signatories.

8.10    Liaison. The Sheriff, or his designee, shall serve as the liaison for the County with Provider with respect to the provisions of this Agreement and all aspects of the delivery of On-Site Services.

8.11    Time of Essence; Force Majeure. Time is and shall be of the essence for this Agreement. Neither Party shall be deemed in violation of this Agreement if either is prevented from performing any of its obligations hereunder for any reason beyond its control, including, without limitation, acts of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods or catastrophic failure of public transportation.

8.12    Cumulative Powers. Except as expressly limited by the terms of this Agreement, all rights, power and privileges conferred hereunder shall be cumulative and not restrictive of those provided at law on in equity.

23F271103                                          12

BOOK 2018 PAGE 2375

8.13  Non-Assignment. Except as provided in Section 5.5, No Party may assign any of its rights under this Agreement, without the prior written consent of the other Party. Any purported assignment of rights in violation of this Section is void.

8.14  Counterparts. The Parties may execute this Agreement in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by facsimile is as effective as executing and delivering this Agreement in the presence of the other Parties to this Agreement. This Agreement is effective upon delivery of one executed counterpart from each Party to the other Parties. In proving this Agreement, a Party must produce or account only for the executed counterpart of the party to be charged.

\* \* \*

[*Signature pages follow.*]

23F271103

BOOK 2018 PAGE 2376

IN WITNESS WHREOF, the Parties have executed this Agreement in their official capacities with legal authority to do so.

MADISON    COUNTY,    MISSISSIPPI,
ACTING BY AND THROUGH ITS BOARD
OF SUPERVISORS

By: _Shelia Jones_____
Name: Shelia Jones
Title: President of the Board of Supervisors of
Madison County, Mississippi

ATTEST: _Ronny Lott_____
Name: Ronny Lott
Title: Chancery Clerk of Madison County,
Mississippi

SHERIFF'S CONSENT

The undersigned duly elected Sheriff of Madison County, Mississippi, as custodian of the Facility referred to in the above Health Care Services Agreement, does hereby acknowledge and consent to such agreement.

_Randy Tucker_____
Name: Randy Tucker
Sheriff of Madison County, Mississippi

*[Signature Page to Health Care Services Agreement]*

23F271103

14

BOOK 2 0 1 8 PAGE 2 3 7 9

MISSISSIPPI CORRECTIONAL
SERVICES, LLC

*Paul Millette*

By: Paul Millette
Its: President and CEO

*[Signature Page to Health Care Services Agreement]*

23F271103

15

# FIRST AMENDMENT TO
# HEALTH CARE SERVICES AGREEMENT
### between
## MISSISSIPPI CORRECTIONAL SERVICES, LLC
### and
## MADISON COUNTY, MISSISSIPPI

**January 7, 2019**

23L188603

## FIRST AMENDMENT TO
## HEALTH CARE SERVICES AGREEMENT

This First Amendment to Health Care Services Agreement (this "Amendment") dated January 7, 2019, is between **MADISON COUNTY, MISSISSIPPI**, a political subdivision of the State of Mississippi ("County") acting by and through its Board of Supervisors, and **MISSISSIPPI CORRECTIONAL SERVICES, LLC**, a Mississippi limited liability company ("Provider"). County and Provider may be individually referred to as a "Party" and jointly referred to as the "Parties."

The Parties previously entered into that certain Health Care Services Agreement dated September 27, 2018 (the "Agreement").   The Parties desire to supplement and amend the Agreement as provided herein.

Therefore, the Parties agree as follows:

1.      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

2.      The Agreement is amended by inserting a new Article 9 immediately following Section 8.14 reading as follows:

### ARTICLE 9: LIABILITY AND RISK MANAGEMENT

**9.1      Insurance.**

(a)      At all times during the Term, Provider shall maintain, at a minimum:

(i)      professional liability insurance covering Provider, its employees and its officers in the minimum amount of One Million Dollars ($1,000,000) per claim and Three Million Dollars ($3,000,000) annual aggregate;

(ii)      commercial general liability insurance covering Provider its representatives, employees, officers, agents, and subcontractors for its On-Site Services in the minimum amount of at least one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate; and

(iii)      workers' compensation insurance for all of its employees providing services under the Agreement with limits of not less than those required by statute.

(b)      The County, its officials, officers, and employees shall be listed as additional insureds on the certificate of insurance regarding coverages in Sections 9.1(a) and (b) above.

23L188602

(c)    The above Provider insurance coverage shall be primary with respect to any insurance or self-insured retention programs covering County, its officials, officers, and employees. If Provider's coverage changes, Provider will notify County in writing. Provider will also notify County, in writing, of any reduction in policy amounts or cancellation of insurance coverage if the new limits fall below the above limits. Upon written request, Provider will provide a Certificate of Insurance evidencing the above policy coverage levels.

**9.2    Indemnification**.

(a)    Effective as of the commencement of the Term, Provider agrees to indemnify, defend, and hold harmless County and its elected officials, officers, agents and employees from all claims, complaints, costs (including attorney fees), actions, lawsuits, damages, judgments and/or liabilities suffered or incurred by the Provider or Provider's officers, agents and/or employees (collectively, "Provider Personnel"), resulting in any way from the negligence, inadvertence, error, or omission of Provider or Provider Personnel or their failure to carry out their responsibilities as described in the Agreement, including those imposed by state and federal law. County shall promptly notify Provider of any incident, claim or lawsuit of which County becomes aware and shall fully cooperate in the defense of such claim, but Provider shall retain sole control of the defense while the action is pending, to the extent allowed by law. Provider shall acknowledge and accept any proper request for indemnification hereunder no later than fifteen (15) days after the receipt of a proper request for indemnification from the County and Provider shall send the County written acceptance of the request for indemnification along with any claim number and information regarding retained counsel.

(b)    Notwithstanding the foregoing, effective as of the commencement of the Term, County does hereby agree to indemnify, defend and hold harmless Provider and Provider Personnel from claims, actions, lawsuits, damages, judgments or liabilities of any kind whatsoever arising out of the negligence of County and its elected officials, officers, agents and employees, or such parties' failure to carry out their responsibilities as described in the Agreement, including those imposed by state and federal law.

**9.3    Lawsuits Against County**. In the event that any lawsuit is filed against the County, its elected officials, employees and agents based on or containing any allegations concerning Provider's medical care of Inmates and the performance of Provider's employees, agents, subcontractors or assignees under this Agreement, Provider, and its relevant employees, agents, subcontractors, assignees or independent contractors, as the case may be, may be joined as parties defendant in any such lawsuit and shall be responsible for their own defense and any judgments rendered against them in a court of law (except as otherwise provided in Section 9.2 above). Nothing herein shall prohibit any of the Parties from joining any other Party or their relevant elected officials, employees, agents,

subcontractors, assignees or independent contractors hereto as defendants in lawsuits filed by third parties.

3.    This Amendment is made effective as of the commencement of the Term of the Agreement.

4.    As amended and supplement by this Amendment, the Agreement is hereby ratified, approved and confirmed.

5.    The Agreement, as amended by this Amendment, constitutes the final agreement between the Parties. It is the complete and exclusive expression of the Parties' agreement on the matters contained in the Agreement, as amended by this Amendment. All prior and contemporaneous negotiations and agreements between the Parties on the matters contained in the Agreement, as amended by this Amendment are expressly merged into and superseded by the Agreement, as amended by this Amendment. The provisions of the Agreement, as amended by this Amendment, may not be explained, supplemented or qualified through evidence of trade usage or a prior course of dealings. In entering into the Agreement, as amended by this Amendment, neither Party has relied upon any statement, representation, warranty or agreement of the other Party except for those expressly contained in this Agreement, as amended by this Amendment. There are no conditions precedent to the effectiveness of the Agreement, as amended by this Amendment, other than those expressly stated in this Agreement.

6.    The parties may amend this Amendment only by a written agreement of the parties that identifies itself as an amendment to this Agreement.

7.    The Parties may execute this Amendment in multiple counterparts, each of which constitutes an original, and all of which, collectively, constitute only one agreement. The signatures of all of the Parties need not appear on the same counterpart, and delivery of an executed counterpart signature page by facsimile is as effective as executing and delivering this Amendment in the presence of the other Parties to this Amendment. This Amendment is effective upon delivery of one executed counterpart from each Party to the other Parties. In proving this Amendment, a Party must produce or account only for the executed counterpart of the party to be charged.

* * *

*[Signature pages follow.]*

**IN WITNESS WHREOF,** the Parties have executed this Amendment in their official capacities with legal authority to do so.

MADISON COUNTY, MISSISSIPPI, ACTING BY AND THROUGH ITS BOARD OF SUPERVISORS

By: _____

Name: ~~Shelia Jones~~ Trey Baxter

Title: President of the Board of Supervisors of Madison County, Mississippi

ST: _____

Name: Ronny Lott

Title: Chancery Clerk of Madison County, Mississippi

**SHERIFF'S CONSENT**

The undersigned duly elected Sheriff of Madison County, Mississippi, as custodian of the Facility referred to in the above Health Care Services Agreement, does hereby acknowledge and consent to such agreement.

_____

Name: Randy Tucker

Sheriff of Madison County, Mississippi

*[Signature Page to Health Care Services Agreement]*

23L188602                                4

**MISSISSIPPI CORRECTIONAL
SERVICES, LLC**

By: Paul Millette
Its: President and CEO

*[Signature Page to Health Care Services Agreement]*

# MADISON COUNTY DETENTION CENTER
## Inmate Request Form

**Name:** **Lanekia Brown**          **Inmate Bk#:** **076099**          **Cell #:** **1MA5005L**

## To: (Select Only One)

Captain Brian Watson - Warden: ☐
Lt. Thomas Strait - Facilities Manager, Phones, Tablets: ☑
Lt. T. Andre Jones - SRT/CRT: ☐
Lt. Gratiana Handy - Case Management, Booking Department, Notary: ☐
M/Sgt. Tiffany White – Booking Department, Video Arraignment: ☐
Sgt. Skyler Smith – Inmate Services, Inmate Discipline: ☐
Cpl. Lana Watkins – Visitation: ☐
D/O Dylan Husted -- Maintenance, Supplies: ☐
D/O Sylvia Thompson – Records Manager, Bible Requests: ☐
D/O Shaqueria Branch – Inmate Grievances, Canteen: ☐
D/O Barbara Hurrod – Mail, Packages: ☐
D/O Nettie Gilmore – Medical, Law Library, PREA: ☐
Leeanna Massey - Admin. Asst., Canteen Bookkeeping: ☐
Investigator/Deputy/Other Employee:_____

TYPE OF REQUEST: SELECT ONLY ONE BOX PER REQUEST

See Chaplain: ☐                          Plumbing Problem: ☐
Use Law Library: ☐                       Air Conditioning/Heating Problem: ☐
Classification Review: ☐                 Change Phone List/Calling Cards: ☐
Add/Delete Visitor: ☐                    Grievance Form: ☐
Notary: ☐                                Canteen Account Questions/Statement: ☐

**REMARKS:**
12/05/2018 23:11:42
i been here since 11/26/18 haven't been to medical yet. i've inform several of your officers that i'm pregnant, have rods n screws n my back. i'm sleeping on one mat.

thank,
ms. brown

RESPONSE:  Intake done - urine preg. positive - extra matt & extra pregnancy portions from kitch        M. Joy

Officer Name:_____    SO #:_____    Date Received:_____

EXHIBIT D

# SICK CALL REQUEST

**Check One:**

**Dental:** □          **Medical:** ☑          **Mental Health:** □

**Name:** Lanekia Brown     **Inmate ID #:** 076099     **Cell #:** 1MA5005L

**Social Security:** _____

Medical Problem (be specific):

12/21/2018 06:32:26

i am 9 weeks pregnant and i am spotting blood with cramping and sharp pain in my private area also headaces -plus constipation

FOR MEDICAL UNIT USE ONLY

S: *Pelvic pain -*

O: T 0 P RR 20 BP 138/88 WT Pulse Ox _____ %:

A: *l*

P: *Nausea, vomiting*

E:

Disposition: *100.*
*Colace - Bid - ×7 days.*

*2017 Nov, Oct.*

*Schedule OB Appt -*

Nursing Protocol: _____

Provider's Signature: _____ Date: _____ Time: _____

Referred to Physician: □          Appointment Date: _____ Time: _____

MEDICATION ADMINISTRATION RECORD

Madison County Detention Center

| MEDICATIONS | HOUR | 1 | 2 | 3 | ... | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Prenatal vitamin qd x 90 days 12/6/18 — 3/6/19 | 0900 | | | | | | | | | | |
| Colace 100mg PO BID x 7 Days 12-21 — 12-27 | 0900 | | | | | | | | | | |
| | 2100 | | | | | | | | | | |
| Tylenol 325mg 2 Tabs PO BID for Pain 12/22/18 PRN q6° | | | | | | | | | | | |

REORDER FROM INTEGRAL SOLUTIONS GROUP - 1-800-235-0767    FORM A-55    STOCK 605051

CHARTING FOR 12-6-18    THROUGH

| Physician | Zein | | Telephone No. | | Medical Record No. |
|---|---|---|---|---|---|
| Alt. Physician | | | Alt. Telephone | | |
| Allergies | NKA | | Rehabilitative Potential | | |

Diagnosis

| Medicaid Number | Medicare Number | Approved By Doctor: By: | | Title: | Date: |
|---|---|---|---|---|---|
| RESIDENT Brown, Lanekia | | D.O.B. 6-18-81 | Sex F | Room A5 | Patient Code | Admission Date |

EXHIBIT E

## MADISON COUNTY DETENTION CENTER
### Inmate Request Form

**Name:** Lanekia Brown    **Inmate Bk#:** 076099    **Cell #:** 1MA5005L

**To: (Select Only One)**

Captain Brian Watson - Warden: ☐
Lt. Thomas Strait - Facilities Manager, Phones, Tablets: ☑
Lt. T. Andre Jones - SRT/CRT: ☐
Lt. Gratiana Handy - Case Management, Booking Department, Notary: ☐
M/Sgt. Tiffany White – Booking Department, Video Arraignment: ☐
Sgt. Skyler Smith – Inmate Services, Inmate Discipline: ☐
Cpl. Lana Watkins – Visitation: ☐
D/O Dylan Husted -- Maintenance, Supplies: ☐
D/O Sylvia Thompson – Records Manager, Bible Requests: ☐
D/O Shaqueria Branch – Inmate Grievances, Canteen: ☐
D/O Barbara Hurrod – Mail, Packages: ☐
D/O Nettie Gilmore – Medical, Law Library, PREA: ☐
Leeanna Massey - Admin. Asst., Canteen Bookkeeping: ☐
Investigator/Deputy/Other Employee:_____

TYPE OF REQUEST: SELECT ONLY ONE BOX PER REQUEST

See Chaplain: ☐                        Plumbing Problem: ☐
Use Law Library: ☐                     Air Conditioning/Heating Problem: ☐
Classification Review: ☐               Change Phone List/Calling Cards: ☐
Add/Delete Visitor: ☐                  Grievance Form: ☐
Notary: ☐                              Canteen Account Questions/Statement: ☐

**REMARKS:**
12/05/2018 23:11:42
i been here since 11/26/18 haven't been to medical yet. i've inform several of your officers that i'm pregnant, have rods n screws n my back. i'm sleeping on one mat.

thank,
ms. brown

RESPONSE: In take done - mine preg. positive - extra
Matt 2 extra pregnancy portions from kitch
M. Joy

Officer Name:_____    SO #:_____    Date Received:_____

## SICK CALL REQUEST

**Check One:**

**Dental:** ☐              **Medical:** ☑                    **Mental Health:** ☐
**Name:** Lanekia Brown    **Inmate ID #:** 076099          **Cell #:** 1MA5005L
**Social Security:**_____

Medical Problem (be specific):
12/21/2018 06:32:26
i am 9 weeks pregnant and i am spotting blood with cramping and sharp pain in my private area also headaces -plus constipation

FOR MEDICAL UNIT USE ONLY

S: Pelvic pain -

O: Pl RR 20 BP /80 WT Pulse Ox _____ %:

A: 1

P: Nausa, vomiting

E:

Disposition:                                    100.
                                               Colace - Bid - X7 days.

2017  Nov, Oct.

        Schedule OB Appt -

Nursing Protocol:_____
Provider's Signature:_____    Date:_____    Time:_____
Referred to Physician: ☐    Appointment Date:_____    Time:_____

# MADISON COUNTY DETENTION CENTER
## Jail Incident Report

Page __1__ of __1__

**Incident Date:** _____ 12/22/2018 _____    **Time:** ___ Approx.1828hrs ___

**Location:** _____ A-6 _____    **Report Date:** _____ 12/22/2018 _____

**Type of Incident** _____ condition of Inmate _____

I/M Name: ____ Brown ____ ____ Lanekia ____ ID # __76099__ Type of Custody O
        Last        First

I/M Name: _____ _____ ID # _____ Type of Custody
        Last        First

I/M Name: _____ _____ ID # _____ Type of Custody
        Last        First

I/M Name: _____ _____ ID # _____ Type of Custody
        Last        First

Custody Types: County: <u>C</u> – Federal: <u>F</u> -- State: <u>S</u> – Other: <u>O</u>

## Narrative

On Saturday December 232,2018 at Approx.1828Hrs I, Officer Raven Pate D-34 was working A-Hall. When I heard a loud banging coming from A5 flap, While arriving to A5 flap Inmate Lanekia Brown Bk#76099 stated that "She is having stomach pain". I, Officer Pate then notified Msgt.M.Spann D-7 about this matter. Inmate Brown was then escorted to medical seen and clear by MCDC medical staff and placed In Medical Holding on a PII Watch per medical. Medical will receive a copy of this report.

------------------------------------------------END OF REPORT------------------------------------------------

○ **Recommend Formal Discipline**    ◉ **Incident Handled by Officer**

Witnesses: 1. _____    2. _____    3. _____

**Reporting Officer Print:** ___ D/O Raven Pate D-34 ___    **Sign:** _~signature~_

**Report Review:** _~signature~_ 12-22-18    Out    Cn 12-26-18
        Watch commander – Date        Captain – Date        Major -- Date

FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION

MCDC-01    8/22/16

EXHIBIT G

# MADISON COUNTY DETENTION CENTER

## PROTECTIVE CUSTODY — LEVEL I –II – III

(CIRCLE ONE)

INMATE: _D. Brown_

DATE: _12-22-18_

EVERY _15_ MINUTES

SHIFT: _2_

| TIME | OFFICER | TIME | OFFICER |
|------|---------|------|---------|
| 1800 1018 | Pate | | |
| 1845 | Pate | | |
| 1900 | N | | |
| 1915 | N | | |
| 1932 | N | | |
| 1948 | N | | |
| 2000 | N | | |
| 2016 | N | | |
| 2032 | N | | |
| 2048 | N | | |
| 2102 | N | | |
| 2112 | N | | |
| 2130 | N | | |
| 2146 | N | | |
| 2200 | N | | |
| 2216 | N | | |
| 2230 | N | | |
| 2246 | N | | |
| 2300 | N | | |

FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION

FOR MEDICAL OR OTHER PROTECTIVE WATCH

**EXHIBIT H**

Form Updated: 02/07/2017 by Major McNeal

# MADISON COUNTY DETENTION CENTER

## PROTECTIVE CUSTODY – LEVEL I – II – III

 MH

(CIRCLE ONE)

INMATE: Brown L          EVERY ___15___ MINUTES

DATE: 12-22-18          SHIFT: ___2___

| TIME | OFFICER | TIME | OFFICER |
|------|---------|------|---------|
| 2300 IN/8 | Green 73 | 0334 | Green 73 |
| 2313 HC | Green 73 | 0349 | Green 73 |
| 2335 | Green 73 | 0401 | Green 73 |
| 2348 | Green 73 | 0416 | Green 73 |
| 0008 | Green 73 | 0428 | Green 73 |
| 0024 | Green 73 | 0443 Tablet Pass | Green 73 |
| 0039 | Green 73 | 0500 | Green 73 |
| 0045 medical/Intake | Green 73 | 0513 medical | Green 73 |
| 0102 | Robinson D57 | 0528 | Green 73 |
| 0117 Cell Patrol | Green 73 | 0543 | Green 73 |
| 0131 | Green 73 | 0601 Trays | Green 73 |
| 0159 | Green 73 | 0647 | Green 73 |
| ★0145 0055 entered unit | Green 73 | 0700 t01 | Green |
| 0210 | Green 73 | | |
| 0225 | Green 73 | | |
| 0239 | Green 73 | | |
| 0259 | Green 73 | | |
| 0310 | Green 73 | | |
| 0317 HC CP | Green 73 | | |

FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION

FOR MEDICAL OR OTHER PROTECTIVE WATCH

Form Updated: 02/07/2017 by Major McNeal

# MADISON COUNTY DETENTION CENTER

## PROTECTIVE CUSTODY – LEVEL I –(II)– III

(CIRCLE ONE)

INMATE: __Brown, Lanekia__     EVERY ___15___ MINUTES

DATE: __12-23-18__     SHIFT: ___1st___

| TIME | OFFICER | TIME | OFFICER |
|------|---------|------|---------|
| 0700 | Gore | | |
| 0715 | Gore | | |
| 0730 | Gore | | |
| 0745 | Gore | | |
| 0800 | Gore | | |
| 0821 | Gore | | |
| 0838 | Gore | | |
| 0854 | Gore | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION

FOR MEDICAL OR OTHER PROTECTIVE WATCH

# MADISON COUNTY DETENTION CENTER
## Jail Incident Report

Page __1__ of __1__

**Incident Date:** _____12/23/2018_____    **Time:** __Approx: 0923__

**Location:** _____Med Holding_____    **Report Date:** __12/23/2018__

**Type of Incident** _____Information_____

I/M Name: _____Brown_____    ____Lanekia____   ID # __76099__   Type of Custody  O
         Last                     First

I/M Name: _____   _____   ID # _____   Type of Custody
         Last                     First

I/M Name: _____   _____   ID # _____   Type of Custody
         Last                     First

I/M Name: _____   _____   ID # _____   Type of Custody
         Last                     First

Custody Types: County: <u>C</u> – Federal: <u>F</u> – State: <u>S</u> – Other: <u>O</u>

## Narrative

On December 23, 2018 at approximately 0923 Officer Gore D49 called into control room from processing phone, and stated that she checked on inmate Brown Lanekia 76099 but she would not respond when she called her name, so she informed Nurse Evans and she was not willing to check on her at that moment. Msgt. Stewart D9 was present at this time in control room and I Officer Smith D46 relayed the message. Msgt. Stewart D9 immediately went to cell Med Holding. At 0926 Inmate Brown 76099 was unresponsive and assessed. Secon 5 was placed at 0928. Pafford arrived at 0939 to MCDC.

◯ **Recommend Formal Discipline**          ◉ **Incident Handled by Officer**

Witnesses: 1. _____  2. _____  3. _____

**Reporting Officer Print:** ____D/O Mona Smith____   Sign: _Mona Smith_

**Report Review:** _MylZStewart_ out _____ 12-26-18
                   Watch commander – Date      Captain – Date      Major – Date
                   12/23/18.

FALSIFICATION OF THIS FORM MAY RESULT IN TERMINATION

MCDC-01                                                    8/22/16

EXHIBIT I



# Office of the Sheriff
## Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

### Detention Officer Paige Olson

For successfully completing a 40 hour Pre-Basic course presented at the Madison County Detention Center on the 1st Day of May 2015.

Jail Administrator

Instructor

6-19-15
Date

6-19-15
Date

Collective EXHIBIT J



# Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

Detention Officer Jessica Olson

for successfully completing a 4 hour Basic O.C. Re-Certification course with exposure that was presented at the Madison County Detention Center on the 23rd Day of February 2017.

Chuck McNeal
Jail Administrator
Date 2/23/17

Lt. ___
Instructor
Date 2-23-17



Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Jessica Olson

For successfully completing a 2 hours Use of Force Refresher course presented at the
Madison County Detention Center on the 24th Day of February 2017.

Chuck McNeal

Jail Administrator

Instructor

2-24-17
Date

2-24-17
Date



*Office of the Sheriff*

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Paige Olson

for successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 1st Day of May 2015.

_____
Jail Administrator

6-14-15
Date

_____
Instructor

6-19-15
Date

# Rankin County Law Enforcement Officer's Training Institute

*Certificate of Completion*

## Jessica Olson

Madison County Sheriff's Department

### Successfully

Completed 96 hours of MS Standards and Training

## Mississippi Adult Detention Officer Course

Granted: October 24, 2017

_____
Captain Barry Vaughn

_____
Lieutenant David King

Mental Health
First Aid USA



MENTAL
HEALTH
FIRST AID®

## Certificate

## Jessica Olson

has completed the 8 hour course and is now certified in

## Mental Health First Aid USA

And has been trained to provide initial help to people experiencing mental health problems such as depression, anxiety disorders, psychosis, and substance use disorders.

This certification became effective on:
Date

11-15-2017

This certification expires on:
Date

11-15-2020

_Cheane Williams_
Instructor

_Kambera Thompson, MS, CMHT_
Instructor



MISSOURI DEPARTMENT OF
MENTAL
HEALTH

## NATI⬤NAL COUNCIL
FOR BEHAVIORAL HEALTH
MENTAL HEALTH FIRST AID
*Healthy Minds. Strong Communities.*

Mental Health First Aid USA is coordinated by the National Council for Behavioral Health, the Maryland Department of Health and Mental Hygiene, and the Missouri Department of Mental Health.



# Rankin County Law Enforcement Officer's Training Institute

*Certificate of Completion*

**Jessica Olson**

Madison County Sheriff's Department

**Successfully**

Completed 96 hours of MS Standards and Training

**Mississippi Adult Detention Officer Course**

Granted: October 24, 2017

Captain Barry Vaughn

Lieutenant David King

HEARTSAVER CPR AED

Heartsaver®
CPR AED



American
Heart
Association®

The above individual has successfully completed the objectives and skills evaluations
in accordance with the curriculum of the AHA Heartsaver CPR AED Program. Optional
completed modules are those NOT marked out:

JESSICA PAIGE OLSON

08/22/2017
Issue Date

08/2019
Recommended Renewal Date

HEARTSAVER CPR AED

Training       AUTTONBERRY PROHEALTH
Center Name    ASSOCIATES        MS15270

TC             1888 MAIN ST. / SUITE C-357
Info           City, State MADISON, MS 39110  PH: 601-954-7035

Course
Location       MADISON COUNTY SHERIFF'S OFFICE

Instructor
Name           SKYLER SMITH - 07170589875

Holder's
Signature

© 2015 American Heart Association    Tampering with this card will alter its appearance.    15-1810

# AXON Academy

## CERTIFICATE OF COMPLETION

AWARDED TO

JESSICA OLSON

OF (Madison County Sheriff's Office)

IN RECOGNITION OF YOUR SUCCESSFUL COMPLETION OF

TASER Conducted Energy Weapon (X26P) CEW
V.22 USER CERTIFICATION COURSE

TRAINING CERTIFICATE

ISSUED ON (4/12/21)
ISSUED BY (Thomas Strait)



AXON TRAINING
CERTIFIED

# CERTIFICATE OF TRAINING

The Mississippi Association Of Gang Investigators

Awards this Certificate Of Attendance To

## JESSICA OLSON

For Successful Completion: 24 Hours Of Training In

Gang Intelligence / Never Backing Down

MISSISSIPPI ASSOCIATION OF GANG INVESTIGATORS

**2016 Annual Training Conference**

November 7-10, 2016

OXFORD MS

MAGI

PRESIDENT

# St. Petersburg College

## Center for Public Safety Innovation

### Multijurisdictional Counterdrug Task Force Training

A partnership between St. Petersburg College and the Florida National Guard

*This certifies that*

## Jessica Paige Olson

*has satisfactorily completed the following*
*16 hours of training in Brandon, Mississippi*

## Current Drug Trends - Drug Identification for Corrections

*Training completed this thirteenth day of December, two thousand sixteen*

President, St. Petersburg College



Executive Director
SPC Center for Public Safety Innovation

*Certificate of Completion*

Awarded to

*Jessica Olsen*

For your completion of the overview of DNA technology, Justice for All Act,
DNA Identification Act, State of MS DNA Laws and proper DNA sample collection

## Senate Bill 2430 Katie's Law Arrestee Collection

Administered by the Mississippi Forensic Laboratory

**August 2015**



Bioscience Technical Leader

Director

# Office of the Sheriff

Madison County, Mississippi

## Certificate of Training

This Certificate is presented to

### D/O Jessica Olson

for successfully completing a 4 hour Basic O.C. Re-Certification course that was presented at the Madison County Detention Center on the 23rd Day of April 2020.

Jail Administrator

Date 4/23/20

Instructor

Date 4/23/20



Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Msgt. Faith Stewart

For successfully completing a 2 hour Use of Force Refresher course presented at the
Madison County Detention Center on the 21st Day of January 2017.

Jail Administrator

Instructor

2-2017
Date

2-21-17
Date

# Rankin County Law Enforcement Officer's Training Institute

## Certificate of Completion

**Faith Stewart**

Rankin County Sheriff's Department

Successfully

Completed 96 hours of MS Standards and Training

**Mississippi Adult Detention Officer Course**

Granted: September 29, 2015

Lead Instructor Sgt. David King

Chief Eddie Thompson



# Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Faith Stewart

for successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 14th Day of November 2013.



Jail Administrator

Instructor

4-15-14
Date

4-15-14
Date



# Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## M/Sgt. Faith Stewart

For successfully completing a 4 hour Basic O.C. Re-Certification course that was presented at the Madison County Detention Center on the 21st Day of February 2017.

Jail Administrator

2-21-17
Date

Instructor

2-21-17
Date





# Mental Health First Aid USA

## Certificate

# M/Sgt. Faith Stewart

has completed the 8 hour course and is now certified in

# Mental Health First Aid USA

And has been trained to provide initial help to people experiencing mental health problems such as depression, anxiety disorders, psychosis, and substance use disorders.

This certification became effective on:     **11-15-2017**
Date

This certification expires on:     **11-15-2020**
Date

*Christine Williams*
Instructor

Kambria Thompson, MS, CMHT
Instructor



# NATIONAL COUNCIL
## FOR BEHAVIORAL HEALTH
MENTAL HEALTH FIRST AID
*Healthy Minds. Strong Communities.*

Mental Health First Aid USA is coordinated by the National Council for Behavioral Health, the Maryland Department of Health and Mental Hygiene, and the Missouri Department of Mental Health.



# Office of the Sheriff
## Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

**Detention Officer Faith Stewart**

for successfully completing a 40 hour Pre-Basic course presented at the
Madison County Detention Center on the 11th Day of November 2013.

3-17-14
Date

3-17-14
Date

Jail Administrator

Instructor



# Holmes Community College
## Workforce Development
## Ridgeland Campus

*This is to certify that*

# *Faith Stewart*

has satisfactorily completed the AHA Heartsaver First Aid / CPR course for eight (8) hours of continuing education hours and in recognition thereof is awarded this certificate of completion.

November 12, 2013

Lt Josh Hardy

BLS Instructor

## Rankin County Law Enforcement Officers' Training Institute
### *(Adult Detention Transcript)*

Student ID Number: **1259** Social Security Number: **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**

Starting Date: **September 14, 2015** Ending Date: **September 29, 2015**

Student Name: **Faith Stewart**

Student Address: **1523 E. County Line Road Apt. D25**

City: **Jackson** State: **MS** Zip Code: **39219**

Telephone Numbers: Home: **769-251-3383** Work: **601-855-0789**

Employer: **Madison County Sheriff's Department**

Address: **2935 Hwy 51**

City: **Canton** State: **MS** Zip Code: **39046** County: **Madison**

**Module 1: Introduction Course Overview (completed)**
**Module 2: Communication Principles Techniques (completed) Test Result 90%**
**Module 3: Inmate Supervision Principles Techniques (completed) Test Result 100%**
**Module 4: Jail Security Issues (completed) Test Result 100%**
**Module 5: Use of Force Basic Defensive Tactics (completed) Test Result 100%**
**Module 6: Admissions Releases of Inmates (completed) Test Result 100%**
**Module 7: Special Needs Inmates (completed) Test Result 100%**
**Module 8: Health Care Issues (completed) Test Result 100%**
**Module 9: Responding to Medical Emergencies (completed) Test Result 100%**
**Module 10: Report Writing (completed) Test Result 100%**
**Module 11: Legal Issues for Jails (completed) Test Result 100%**
**Module 12: Fire and Other Emergency Procedures (completed) Test Result 100%**
**Module 13: Dealing with Inmate Con Games (completed) Test Result 90%**
**Module 14: Stress Management for Officers (completed) Test Result 100%**
**Module 15: Jailer Responsibilities Ethics (completed)**
**Module 16: Scenarios Practical Application Exercises (completed)**
**Module 17: Closing Comments Critique Graduation (successfully completed all modules)**

HEARTSAVER CPR AED

Training Center Name: **AUTTONBERRY PROHEALTH ASSOCIATES**     MS15270

TC Info: 1888 MAIN ST. 1/10 SUITE C-357
City, St: MADISON, MS 39110   PH: 601-954-7035

Course Location: **MADISON COUNTY SHERIFF'S OFFICE**

Instructor Name: **SKYLER SMITH - 07170589875**     Inst. ID #

Holder's Signature: *[signature]*

© 2015 American Heart Association   Tampering with this card will alter its appearance.   15-1810

---

HEARTSAVER CPR AED

Heartsaver®
CPR AED



American Heart Association®

**MARQUETTA WILLIAMS**

The above individual has successfully completed the objectives and skills evaluations in accordance with the curriculum of the AHA Heartsaver CPR AED Program. Optional completed modules are those NOT marked out:

~~Choking Child~~     ~~Choking Infant~~

08/25/2017
Issue Date

08/2019
Recommended Renewal Date



Office of the Sheriff

Madison County, Mississippi

# Certificate of Completion

This Certificate is presented to

## Detention Officer Marquetta Williams

For successfully completing a 40 hour Pre-Basic Training Course presented by the
Madison County Detention Center on the 7th day of October 2016.

10/7/16
Date

10/7/16
Date

Chuck McNeal
Jail Administrator

Instructor

 

**MENTAL
HEALTH
FIRST AID®**

# Certificate

## Marquette Williams

has completed the 8 hour course and is now certified in

# Mental Health First Aid USA

And has been trained to provide initial help to people experiencing mental health problems such as depression, anxiety disorders, psychosis, and substance use disorders.

This certification became effective on:

Date

**11-15-2017**

This certification expires on:

Date

**11-15-2020**

_____
Instructor

Kambria Thompson, MS, CMHT
Instructor



**NATIONAL COUNCIL**
FOR BEHAVIORAL HEALTH
MENTAL HEALTH FIRST AID
*Healthy Minds. Strong Communities.*

Mental Health First Aid USA is coordinated by the National Council for
Behavioral Health, the Maryland Department of Health and Mental Hygiene,
and the Missouri Department of Mental Health.



Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Marquetta Williams

For successfully completing a 2 hour Use of Force Refresher course presented at the Madison County Detention Center on the 21st Day of January 2017.

Chuck McNeal
_____
Jail Administrator

1-21-17
_____
Date

2-21-17
_____
Date

L.T.
_____
Instructor





Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Marquetta Williams

For successfully completing a 4 hour Basic O.C. Re-Certification course that was presented at the Madison County Detention Center on the 21st Day of February 2017.

2-21-17
Date

2-21-17
Date

_____
Jail Administrator

_____
Instructor

# Office of the Sheriff

## Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

## Detention Officer Patrishea Green

for successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 9th Day of November 2018.

11-15-18
Date

11/15/18
Date

Jail Administrator

Instructor

# Office of the Sheriff

### Madison County, Mississippi

## Certificate of Completion

This Certificate is presented to

### Detention Officer Patrishea Green

For successfully completing a 40 hour Pre-Basic Training Course presented by the Madison County Detention Center on the 2nd day of November 2018.



_____
Jail Administrator

11-6-18
_____
Date

_____
Instructor

11-6-18
_____
Date

# Office of the Sheriff

## Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

### D/O Patrishea Green

for successfully completing a 4 hour Basic O.C. Re- Certification course with exposure that was presented at the Madison County Detention Center on the 24th Day of April 2020.

4/24/20
_____
Jail Administrator    Date

4/24/2020
_____
Instructor    Date



# TCTI

## Certificate of Training

This is to certify that

### Raven Pate

Has successfully completed TCTI's course requirements for

**TCTI**
**Personal Defense Training**
**16 hours**

Seminar Date: Jan. 14-15, 2020

*Jeff Curtis*
Founder and President

Seminar Location:   Hinds Co.

Instructor:

# TCTI

## Certificate of Training

This is to certify that

# Raven Pate

Has successfully completed TCTI's course requirements for

## Mississippi Adult Detention Jailer
### (96 hrs.)

Seminar Date: **Jan. 6-17, 2020**

*Jeff Curtis*
Founder and President

Seminar Location:  **Hinds Co.**

Instructor:

# Rankin County Law Enforcement Officers Training Institute

## and the

### Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## Raven Simone Pate

*who successfully completed a general course of instruction in Basic Part-Time Law Enforcement Officer Training this, the 13th day of August, 2020.*

Credit: 342 Hours

_____
Deputy Mike Heggs
Training Coordinator

_____
Lt. James Rayborn
Director of Training

_____
Bryan Bailey
Rankin County Sheriff



## Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

**Raven Pate**

For successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 27th Day of October 2017.

10/27/17
Date

10/27/17
Date

Jail Administrator

Instructor

# HEARTSAVER CPR AED

## Heartsaver® CPR AED

American Heart Association®

**RAVEN PATE**

The above individual has successfully completed the objectives and skills evaluations in accordance with the curriculum of the AHA Heartsaver CPR AED Program. Optional completed modules are those NOT marked out:

~~Infant CPR/AED Adult CPR/AED Child CPR/AED~~

**10/26/2017**
Issue Date

**10/2019**
Recommended Renewal Date

# HEARTSAVER CPR AED

Training
Center Name
**AUTTONBERRY PROHEALTH**
**ASSOCIATES      MSI5270**

TC
Info
City, St **1888 MAIN ST. / SUITE C-357**
**MADISON, MS 39110  PH: 601-954-7035**

Course
Location **MADISON COUNTY SHERIFFS OFFICE**

Instructor
Name **SKYLER SMITH - 0717058987**     Inst. ID #
**5**

Holder's
Signature *Raven Pate*

© 2015 American Heart Association   Tampering with this card will alter its appearance.  15-1810

# Office of the Sheriff

## Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

**Corporal Raven Pate**

for successfully completing a 4 hour Basic O.C. Re-Certification course with exposure that was presented at the Madison County Detention Center on the 29th Day of April 2020.

4/29/22
Date

4/29/2020
Date



_____
Jail Administrator

_____
Instructor





Office of the Sheriff

Madison County, Mississippi

# Certificate of Completion

This Certificate is presented to

## Detention Officer Raven Pate

For successfully completing a 40 hour Pre-Basic Training Course presented by the
Madison County Detention Center on the 27th day of October 2017.

Chuck M. Neal
Jail Administrator

Instructor

10/27/17
Date

10/27/17
Date

# Rankin County Law Enforcement Officer's Training Institute

*Certificate of Completion*

**Valarie Robinson**

Madison County Sheriff's Department

**Successfully**

Completed 96 hours of MS Standards and Training

**Mississippi Adult Detention Officer Course**

Granted: October 24, 2017

_____
Lieutenant David King

_____
Captain Barry Vaughn

HEARTSAVER CPR AED

Heartsaver®
CPR AED

American
Heart
Association®

VALARIE ROBINSON

The above individual has successfully completed the objectives and skills evaluations
in accordance with the curriculum of the AHA Heartsaver CPR AED Program. Optional
completed modules are those NOT marked out:

08/23/2017

Issue Date

08/2019

Recommended Renewal Date

HEARTSAVER CPR AED

Training
Center Name     AUTONBERRY PROHEALTH
                ASSOCIATES        MSI5270 TC #

TC
Info    City, St MADISON, MS 39110   PH: 601-954-7035
        1888 MAIN ST. / SUITE C-357

Course
Location     MADISON COUNTY SHERIFF'S OFFICE

Instructor
Name         SKYLER SMITH - 07179155875

Holder's
Signature

© 2015 American Heart Association    Tampering with this card will alter its appearance.  15-1810


Rob

# Rankin County Law Enforcement Officer's Training Institute

*Certificate of Completion*

**Valarie Robinson**

Madison County Sheriff's Department

**Successfully**

Completed 96 hours of MS Standards and Training

**Mississippi Adult Detention Officer Course**

Granted: October 24, 2017

_____
Lieutenant David King

_____
Captain Barry Vaughn



Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

Detention Officer Valarie Robinson

For successfully completing a 4 hour Basic O.C. Re-Certification course that was presented at the Madison County Detention Center on the 21st Day of February 2017.

2-21-17
Date

2-21-17
Date

Jail Administrator

Instructor



Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

Detention Officer Valarie Robinson

For successfully completing a 2 hour Use of Force Refresher course presented at the
Madison County Detention Center on the 21st Day of January 2017.

_Chuck McNeal_
Jail Administrator

Instructor

1-21-17
Date

2-21-17
Date



# Office of the Sheriff

Madison County, Mississippi

## Certificate of Training

This Certificate is presented to

Detention Officer Valarie Robinson

for successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 12th Day of June 2015.

6-14-15
Date

6-19-15
Date

Jail Administrator

Instructor



*Office of the Sheriff*
Madison County, Mississippi

**Certificate of Training**

This Certificate is presented to

Detention Officer Valarie Robinson

For successfully completing a 40 hour Pre-Basic course presented at the Madison County Detention Center on the 12th Day of June 2015.

6-19-15
Date

6-19-15
Date

_____
Jail Administrator

_____
Instructor

# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in O.C. Spray training this,*

*the 26th day of January, 2019.*



Lt. James Rayborn
Course Coordinator



Investigator Zach Acy,
Certified Instructor

# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in Emergency Vehicle Driver training this,*

*the 9th day of March, 2019.*

*Credit: 16 hours*

Lt. James Raybon
Course Coordinator

Sgt. Cody Black
Certified Instructor

Corp. Justin Evans,
Certified Instructor

# Rankin County Law Enforcement Officers Training Institute

### and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in Defensive Tactics training this,*

*the 15th day of April, 2019.*



Lt. James Rayborn
Course Coordinator



Investigator Wayne Carter,
Certified Instructor

# RANKIN COUNTY LAW ENFORCEMENT OFFICERS TRAINING INSTITUTE

Certifies that

## *Gabrelle Gore*

Has successfully qualified on the

Board of Law Enforcement Officers Standards and Training Handgun Qualification Course

with a passing score of ___79.1___ %

Conducted on the ___13th___ day of ___June___, 20 __19__,



Lt. James Rayborn, Director of Training



# Rankin County Law Enforcement Officers Training Institute

and the

**Rankin County Sheriff's Department**

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in Basic Part-Time Law Enforcement Officer Training*

*this, the 13th day of June, 2019.*

*Credit: 342 Hours*

_____
**Deputy Mike Huggs**
**Assistant Coordinator**

_____
**Lt. James Rayborn**
**Director of Training**

_____
Bryan Bailey
**Bryan Bailey**
**Rankin County Sheriff**



# Office of the Sheriff

Madison County, Mississippi

# Certificate of Training

This Certificate is presented to

Gabrelle Gore

For successfully completing a 4 hour Basic O.C. Certification course with exposure that was presented at the Madison County Detention Center on the 30th Day of June 2017.

_____
Jail Administrator

_____
Instructor

06/30/17
Date

06/30/17
Date

# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in O.C. Spray training this,*

*the 26th day of January, 2019.*



Lt. James Rayborn
Course Coordinator



Investigator Zach Acy,
Certified Instructor

# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in Emergency Vehicle Driver training this,*

*the 9th day of March, 2019.*

*Credit: 16 hours*

Lt. James Raybour
Course Coordinator

Sgt. Cody Black
Certified Instructor

Corp. Justin Evans,
Certified Instructor

# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

*Awards this Certificate of Completion to*

## GABRELLE GORE

*who successfully completed a general course of*

*instruction in Defensive Tactics training this,*

*the 15th day of April, 2019.*





Lt. James Rayborn
Course Coordinator



Investigator Wayne Carter,
Certified Instructor

# RANKIN COUNTY LAW ENFORCEMENT OFFICERS TRAINING INSTITUTE

Certifies that

## *Gabrelle Gore*

Has successfully qualified on the

Board of Law Enforcement Officers Standards and Training Handgun Qualification Course

with a passing score of ___79.1___ %

Conducted on the ___13th___ day of ___June___ , 20 __19__ ,



Lt. James Rayborn, Director of Training



# Rankin County Law Enforcement Officers Training Institute

and the

Rankin County Sheriff's Department

Awards this Certificate of Completion to

## GABRELLE GORE

who successfully completed a general course of

instruction in Basic Part-Time Law Enforcement Officer Training

this, the 13th day of June, 2019.

Credit: 342 Hours

_____
Deputy Mike Huggs
Assistant Coordinator

_____
Lt. James Rayburn
Director of Training

_____
Bryan Bailey
Rankin County Sheriff

# AXON Academy



## CERTIFICATE OF COMPLETION

AWARDED TO

Gabrelle Gore

OF (Madison County Sheriff's Office)

IN RECOGNITION OF YOUR SUCCESSFUL COMPLETION OF
TASER Conducted Energy Weapon (X26P) CEW
V.22 USER CERTIFICATION COURSE

TRAINING CERTIFICATE

ISSUED ON (9/4/20)
ISSUED BY (Tommy Strait)



**Volunteer: Warnings, Risks, Release & Indemnification Agreement**
(For use with any TASER CEW exposure that is not part of TASER CEW Training)



## SAFETY INFORMATION: CEW DEPLOYMENT AND USE

**[WARNING]** CEWs and cartridges are weapons, and as with any weapon follow safe weapon-handling practices and store your CEW securely. Significant differences exist between different TASER CEW models. Before using any CEW, including a multi-shot CEW, ensure you understand the functioning and effects of that model. Follow practices in Axon's TASER warnings and training materials. Failure to follow the warnings may result in death or serious injury to the user or others.

**[WARNING]** Confusing Handgun with CEW. Confusing a handgun with a CEW could result in death or serious injury. Learn the differences in the physical feel and holstering characteristics between your CEW and your handgun to help avoid confusion. Always follow your agency's Guidance and training, if applicable.

## SAFETY INFORMATION: CEW EFFECTIVENESS

**[WARNING]** Subject Not Incapacitated. An ineffective CEW application could increase the risk of death or serious injury to the user, the subject, or others. If a CEW does not operate as intended or if subject is not incapacitated, disengage, redeploy the CEW, or use other force options. A CEW's effects may be limited by many factors, including absence of delivered electrical charge due to misses, clothing disconnect, intermittent connection, or wire breakage; probe locations or spread; subject's muscle mass; or movement. Some of the factors that may influence the effectiveness of CEW use in effecting or achieving control of a subject include:

**Subject may not be fully incapacitated.** Even though a subject may be affected by a CEW in one part of his body, the subject may maintain full muscle control of other portions of his body. Be prepared in case the subject is not fully incapacitated.
**Subject may recover immediately.** A subject receiving a CEW discharge may immediately regain physical or cognitive abilities upon cessation of the delivered CEW discharge. Be prepared in case the subject immediately recovers.
**Drive-stun mode is for pain compliance only.** The use of a handheld CEW in drive-stun mode is painful, but generally does not cause incapacitation. Drive-stun use may not be effective on emotionally disturbed persons or others who may not respond to pain due to a mind-body disconnect. Avoid using repeated drive-stuns on such individuals if compliance is not achieved.

## SAFETY INFORMATION: GENERAL PRECAUTIONS

**[WARNING]** Unintentional CEW Deployment or Discharge Hazard. Unintentional CEW activation or unexpected cartridge discharge could result in death or serious injury to the user, subject, or others.
**Avoid static electricity.** Keep cartridge away from sources of static electricity. Static electricity can cause a CEW or standard cartridges to discharge unexpectedly, possibly resulting in serious injury.
**Keep body parts away from front of CEW or cartridge.** Always keep your hands and body parts away from the front of the CEW and cartridge. If the CEW discharges unexpectedly you could be injured.

***************

IF YOU HAVE A CONDITION OR PRE-EXISTING INJURY THAT COULD BE AGGRAVATED BY RECEIVING A CEW EXPOSURE, NOTIFY THE INSTRUCTOR AND DO NOT PARTICIPATE.

Please check all boxes that apply:
☑ I want to receive a voluntary TASER CEW exposure.
☑ I do NOT have any pre-existing injuries or conditions that could be aggravated by a voluntary exposure.
☑ I understand the risks associated with receiving a voluntary exposure and fully assume all risks.

## LIABILITY RELEASE & INDEMNIFICATION AGREEMENT

In consideration of, and as a condition precedent to, receiving information on TASER products and a CEW Exposure; I acknowledge and agree as follows:

**I have read, fully understand and accept the risks.** I have read, fully understand, and accept the risks as stated in this document and Axon's current TASER warnings ("Risks") and that these Risks exist whether or not I have pre-existing injuries. With full knowledge of the Risks, I voluntarily agree to receive a CEW exposure.

**I accept the Risks.** Understanding the Risks, I assume all Risks inherent in the CEW exposure, whether known or unknown, foreseen or unforeseen.

**Release and hold harmless.** I release and hold harmless Axon, its agents, officers, directors, employees, distributors, my instructor, and my employer (collectively "Released Parties"), from any and all claims, including but not limited to, claims for strict liability, breach of warranty, failure to warn, or any other theory of liability whatsoever even if due to the NEGLIGENCE or GROSS NEGLIGENCE of the Released Parties. I specifically waive any statutory rights I may have regarding the release of unknown claims.

**I agree no one will sue Released Parties.** I promise that neither I nor anyone on my behalf will ever sue or bring any other legal action or claim against the Released Parties for anything related to my TASER CEW voluntary exposure.

**I will fully indemnify (reimburse) all costs of Released Parties.** I further agree that if I or anyone else files any claim against any Released Party arising out of my TASER CEW exposure in violation of this agreement, I will defend, indemnify and reimburse the Released Parties for any judgment, court costs, expenses, and reasonable expert and attorney fees regardless of who prevails.

**Workers' Compensation Rights.** This release does not waive any rights I may have under Workers' Compensation Laws. However, I waive any Workers' Compensation subrogation rights against the Released Parties and agree to defend and indemnify Axon against any and all claims that may be brought against it by my employer. I agree that any recovery under Workers' Compensation Laws does not change, extend or enlarge the waivers and protections inherent in this agreement.

**This agreement supersedes any other representation.** This release supersedes any other statement, agreement or representation, written or oral, concerning my TASER CEW exposure. I affirm that this is my entire agreement with Axon and I am not relying on any representation by my instructor or employer inconsistent with Axon's TASER warnings and the Risks set forth in this document.

**This agreement is a binding contract.** I intend this form to be legally binding upon me, my heirs, executors, administrators, attorneys and assigns. This agreement is contractual and not a mere recital. If any part of this agreement is held vague, invalid, or otherwise unenforceable, the rest of the agreement will continue in full force and effect.

**I am competent to be bound by this agreement.** I affirm that I am competent to enter into and be bound by this agreement; that I have read and understand this Liability Release & Indemnification Agreement in its entirety; that I have not been induced to sign this agreement by any promise or representation; and that I sign it voluntarily and of my own free will. By signing below I understand that I am giving up certain legal rights, including the right to recover damages in case of injury.

Date 09·04·2020    Signed *Gabrielle Gore*

Printed Name *Gabrielle Gore*

Address 472 Brendalwood Dr Brandon, MS 39047

This completed, signed form shall be retained by the agency performing the voluntary exposure for at least 10 years.
Agencies may opt to retain the form longer than this time frame as deemed necessary.
Questions should be directed to legal@axon.com

Axon, Protect Life, ⊘ and TASER are trademarks of Axon Enterprise, Inc., some of which are registered in the US and other countries. For more information, visit www.axon.com/legal. All rights reserved. © 2019 Axon Enterprise, Inc.

HEARTSAVER    CPR    A E D

**Heartsaver®
CPR AED**



**American
Heart
Association®**

## GABRELLE GORE

The above individual has successfully completed the objectives and skills evaluations
in accordance with the curriculum of the AHA Heartsaver CPR AED Program. Optional
completed modules are those **NOT** marked out:

07/07/2017
Issue Date

07/2019
Recommended Renewal Date

HEARTSAVER    CPR    AED

| | |
|---|---|
| Training Center Name | **AUTTONBERRY PROHEALTH** TC ID # **MS15270** |
| | **ASSOCIATES** |
| TC Info | **1888 MAIN STREET / SUITE C-357** |
| | **MADISON, MS 39110    PH: 601-954-7035** |
| Course Location | **MADISON COUNTY SHERIFF'S OFFICE** |
| Instructor Name | Inst. ID # |
| | **SKYLER SMITH - 07170589875** |
| Holder's Signature | |

© 2015 American Heart Association    *Tampering with this card will alter its appearance.*    15-1810



Office of the Sheriff

Madison County, Mississippi

# Certificate of Completion

This Certificate is presented to

## Detention Officer Gabrelle Gore

For successfully completing a 40 hour Pre-Basic Training Course presented by the
Madison County Detention Center on the 30th day of June 2017.

_____
Jail Administrator

_____
Instructor

6/30/17
Date

6/30/17
Date