UNITED SATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| MARGARET JOHNSON, INDIVIDUALLY AND ON BEHALF OF ALL HEIRS AT LAW AND WRONGFUL DEATH BENEFICIARIES OF LANEKIA BROWN, DECEASED, et al., <br><br> Plaintiffs, <br><br> - against - <br><br> MADISON COUNTY, SHERIFF RANDY TUCKER, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, et al., <br><br> Defendants. | Civ No. 3:21-cv-335 (DPJ) (FKB) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT SHERIFF RANDY TUCKER'S MOTION FOR SUMMARY JUDGMENT

### I.    PRELIMINARY STATEMENT

Lanekia Brown, while in the custody and care of Defendant Tucker, died a horrifically painful death in pre-trial detention. Pregnant and complaining for days about debilitating abdominal pains, accompanied by vomiting, she was ignored by Defendants, including Sheriff Tucker, corrections officers, jail personnel, nurses, and medical workers. Plaintiffs have sufficiently pleaded in their Amended Complaint that due to the deliberate indifference of Defendant Tucker and the other Defendants; Ms. Brown was subjected to due process violations including cruel and unusual punishment in violation of federal law and that her wrongful death was the direct result of Defendants' practices and customs of deliberately and intentionally choosing to ignore detainees, like Ms. Brown's, urgent need for care while she was in their custody.  In fact, just seven months before Ms. Brown's tragic and preventable

death, Harvey Hill, another detainee under Defendants' care, died in their custody. Plaintiffs timely filed this action within all applicable statute of limitation periods.

## II.    FACTUAL ALLEGATIONS

After being arrested on November 26, 2018, for marijuana possession, Ms. Brown was placed into the custody of the Madison County Detention Center ("MCDC") for pre-trial detention. She had increasing amounts of abdominal pain from an undetected ectopic pregnancy. (Sells Affirmation, Exhibit 1, ¶¶10, 15).[1] Ms. Brown complained repeatedly of abdominal pain and vomited several times. Defendants were aware of her pregnancy as her complaints of pain were documented on an inmate request form dated December 5, 2018, where Ms. Brown stated that she had "informed several of your officers that I'm pregnant" and requested medical services due to pain she was experiencing. (See Doc. No. 28-2, pp. 1-3, an exhibit submitted by Defendants). Defendant Tucker's employees, including jail personnel and corrections officers, ignored Ms. Brown's visible physical and medical issues and turned a blind eye to what even a layman would recognize as signs of distress requiring intervention. Instead of having her examined by a physician, or other medical personnel, Ms. Brown was kept in a cell and ignored. With her symptoms and pain increasing, and with no medical care or treatment, Ms. Brown died a painful and unnecessary death in her cell from a ruptured ectopic pregnancy and secondary hemoperitoneum (abdominal bleeding). (Sells Aff., Exhibit 1, ¶¶15-20).

Regardless of any policies that Defendants may have had related to observing detainees, Defendants' practice and custom was to ignore detainees medical needs. Just seven months before Ms. Brown's death at the MCDC, another detainee, Harvey Hill, died while under the custody and

---

[1] All exhibits referenced herein are attached to the Affirmation of Derek S. Sells Affirmation, ("Sells Aff."), dated March 25, 2022, and submitted with this opposition.

care of Defendant Tucker. Specifically, just a few short months prior Ms. Brown's death, Harvey Hill, another pre-trial detainee in MCDC was sent to a medical holding cell after complaining of pain instead of being brought to a doctor.  While in the holding cell and despite the policy of 15-minute observations, Mr. Hill was never checked on until after he died. Mr. Hill was at times not even visible to any employees who may have looked into the cell as he had crawled into the toilet area.  When guards finally checked on him, he was already dead. Plaintiffs allege that Defendants displayed the same deliberate indifference killed Ms. Brown. (Sells Aff. Exhibit 2).

It was not until on or about April 26, 2021, that Plaintiff learned of Ms. Brown's cause of death when Defendant Madison County finally released the autopsy report from the autopsy that had been conducted nearly two-and-half years prior. (Sells Aff., Exhibit 3). The autopsy report indicated that the autopsy was performed on December 26, 2018, yet the autopsy report was not completed and signed until April 26, 2021.  On May 14, 2021, less than thirty days after learning of the cause of Ms. Brown's death, Plaintiffs filed the Complaint in this case, followed by the Amended Complaint on May 25, 2021. Plaintiffs acted promptly as soon as they discovered the actual cause of Ms. Brown's death at the hands of Defendants. (Sells Aff., Exhibit 1; Exhibit 3).

Plaintiffs' Amended Complaint alleges that: Ms. Brown was subject to due process violations and cruel and unusual punishment  in violation of the 5th and 14th Amendments, as well as conspiracy (Count 1); that Defendants' were liable under *Monell* (Count 2); that Defendants Madison County and Sheriff Tucker negligently trained, supervised and retained employees (Count 3); that Defendant Mississippi Correctional Services negligently trained, supervised and retained employees (Count 4); that Defendants are subject to supervisory liability (Count 5); and that Defendants are liable for Ms. Brown's wrongful death (Count 6). (Sells Aff., Exhibit 1, ¶¶26-49)

### III.    ARGUMENT

### A. <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE AS DISCOVERY HAS NOT COMMENCED</u>

When no discovery has taken place, summary judgment is inappropriate. <u>Moreau v. Klevenhagen,</u> 956 F.2d 516, 523 (5th Cir. 1992) (holding that "the district court 'jumped the gun' when it granted summary judgment in favor of the [defendant] before the [plaintiff] had an opportunity to conduct discovery and present proof of damages"). Here no discovery has taken place. As stated in the Affidavit of undersigned counsel, Plaintiffs intend to depose at least ten witnesses, including Defendants Tucker, Camper and Joyner, as well as several corrections officers and medical personnel from the jail. In addition, Plaintiffs intend to request numerous documents and video evidence in this matter, including video from within the jail facility where Ms. Brown was held and ultimately died.

When determining if a summary judgment motion is premature due to incomplete discovery, courts have consistently held that summary judgment is inappropriate when the moving party has exclusive access to the evidence necessary to support the nonmoving party's claims." <u>Phongsavane v. Potter</u>, No. CIVASA05CA0219, 2005 WL 1514091, at *5 (W.D. Tex.); *accord* <u>Whitfield v. Miss. Bureau of Narcotics</u>, No. 3:17CV987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019); Thus, "the nonmoving party must have had an opportunity to discover information necessary to its opposition to the summary judgment motion before summary judgment may be granted." <u>George v. Go-Frac, LLC</u>, 2016 WL 94146, at *2; see <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (noting that the grant of summary judgment is limited until there has been "adequate time for discovery."

Rule 56(d) of the Federal Rules of Civil Procedure specifically provides that a court may deny a motion for summary judgment when it is deemed premature. Rule 56(d) provides:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d); *accord* <u>Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso</u>, 836 F. App'x 203 (5th Cir. 2020)<u>;  Wade v. Brennan, 6</u>47 F. App'x 412, 417 (5th Cir. 2016).

Here, Plaintiffs assert that they have not had a sufficient opportunity to discover information necessary to fully craft their opposition to Defendants' premature summary judgment motion. Specifically, Plaintiffs have highlighted numerous depositions that they have not yet had the opportunity to take, as well as document and video evidence that they have not had the opportunity to procure. No discovery has taken place, nor has a discovery schedule been set. Here, all critical discovery is in the exclusive hands of Defendants. Plaintiffs will not have access to this necessary evidence until discovery occurs, thus Plaintiffs do not possess the information necessary to fully oppose this premature summary judgment motion.  In addition, Defendant Tucker references in his declaration that he reviewed video related to this matter, but notably did not offer the video as an exhibit to his declaration. This is significant as in the Harvey Hill case, the video makes it clear that whatever policies Defendants may have had in place, they were not followed, as Mr. Hill died while in Defendants' custody.  In addition, without seeing the video of Ms. Brown's detention, we don't yet know if she was visible to any jail employees who were supposedly assigned to observe her.

This fact discovery is critical to oppose a summary judgment motion, which is to determine if any genuine issues of fact exist. Since no discovery has taken place, Plaintiffs are unable to proffer the numerous issues of material fact that certainly exist.  Since summary judgment is only proper when the evidence shows that there is no genuine dispute as to any

material fact, the nonmoving party must have an opportunity to discover information necessary to its opposition to the summary judgment motion before summary judgment may be granted. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–52 (1986). See also. Fed. R. Civ. P. 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.).

Further, Defendant Tucker's conclusory and self-serving declaration should be stricken. In fact, Defendant Tucker states in the declaration that he "was not physically present at the MCDC" on the dates that Ms. Brown died. (Doc. No 38-1, ¶ 2).  As such his declaration, replete with hearsay, should not be considered by the Court.

This Court "simply may not rely upon unsupported, conclusory allegations" to grant a motion for summary judgment. Jacox v. Circus Circus Mississippi, Inc., 908 So. 2d 181, 184 (Miss. Ct. App. 2005). Affidavits must "set forth such facts as would be admissible in evidence." See M.R.C.P. 56(e). Affidavits that contain conclusions or conjecture and insufficient factual specificity are not competent summary judgment evidence. Richardson v. Oldham, 12 F.3d 1373, 1378-79 (5th Cir. 1994).  Here, Defendant Tucker's hearsay declaration  that contains no personal knowledge must be ignored.

### B. <u>PLAINTIFFS HAVE SUFFICIENTLY PLEADED THEIR CLAIMS TO DEFEAT A MOTION TO DISMISS</u>

This Court has clearly set forth the standard of review governing motions to dismiss on the pleadings.  On such a motion, the pleading is afforded a liberal construction in that the facts alleged in the complaint are accepted as true and plaintiffs are afforded every benefit of every possible favorable inference to determine whether the facts fit within any cognizable legal theory. Anderson v. Valdez, 845 F.3d 580, 589 (5th Cir. 2016); Van Duzer v. U.S. Bank National Association, 995

F. Supp 2d 673 (S.D. Texas 2014); See also Hartford Casualty Company v. Halliburton Company, 826 So. 2d 1206. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009 (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). In this case, when viewed in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pleaded all causes of action.

In considering a motion to dismiss, the Court must accept all well-pleaded facts as true and view them in the light most favorable to Plaintiff. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir.1996). The issue is not whether the plaintiff will prevail but whether Plaintiff is entitled to pursue her complaint and offer evidence in support of her claims. Doe v. Hillsboro Indep. Sch. Dist., 81 F.3d 1395, 1401 (5th Cir.1996). The Court may not look beyond the pleadings in ruling on the motion. Baker, 75 F.3d at 196. Motions to dismiss are disfavored and are rarely granted. Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir.1999).

Specifically, in response to Defendants' assertions in their motion, Plaintiffs have sufficiently pleaded that Defendant Tucker is liable for Ms. Brown's wrongful death due to his deliberate indifference in having a policy in place to deny medical assistance to detainees in the jail. Plaintiffs have pleaded that Defendant Tucker acted in concert and in a conspiracy with co-Defendants to deliberately ignore Ms. Brown's cries for help as she was experiencing deadly abdominal pains from her untreated ruptured ectopic pregnancy. This deliberate indifference amounted to cruel and unusual punishment in violation of 42 U.S.C §1983. These constitutional violations resulted in the serious injuries, horrible pain and suffering, and the death of Ms. Brown. Moreover, Sheriff Tucker knew that these policies were not enforced and were constitutionally defective because he was aware of Harvey Hill's death just a few months prior. Plaintiffs allege that Defendants

displayed the same deliberate indifference killed Ms. Brown.

Further, Plaintiffs have sufficiently pleaded that Defendant Tucker negligently trained, supervised and retained employees who created the dangerous conditions that resulted in Ms. Brown's painful, tragic and preventable death. The self-serving, incomplete and conclusory evidence submitted by Defendants Tucker is highly disputed. The training records attached to Defendant Tucker's declaration are not relevant to the lack of care and treatment that Ms. Brown received.  In addition, the observation sheet submitted does not indicate what observations were actually made while Ms. Brown suffered in excruciating pain for hours leading to her death. Nor does it indicate the full names of any employees who were purportedly observing Ms. Brown. The random training certificates submitted do not indicate that any of those employees were on duty when Ms. Brown suffered and died. Further, the fact that Ms. Brown died in Defendants' custody illustrates that whatever policies may have been in place, the custom and practices were to ignore detainees' pleas for help. Since discovery has not yet begun, Plaintiff has not had an opportunity to request or receive documents, records and critical video evidence in this matter, or to depose the relevant witnesses.

In a section 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Goodman v. Harris County, 571 F.3d 388, 396 (5th Cir. 2009) (quoting Smith v. Brenoettsy, 158 F. 3d 908, 911-12 (5th Cir. 1998)).

Under both the motion to dismiss on the pleadings standard and the summary judgment standard, Plaintiffs have met their burden.

### C. **DEFENDANT TUCKER'S CLAIM OF QUALIFIED IMMUNITY FAILS**

The doctrine of qualified immunity protects public officials acting within the scope of their official duties from civil liability so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order to overcome the individual Defendants' assertions of qualified immunity in this case, Plaintiffs must establish (1) that they have asserted the violation of a constitutional right (2) that was clearly established at the time of the Defendants' actions; and (3) that the Defendants' actions were objectively unreasonable. Eugene v. Alief Indep. Sch. Dist., 65 F.2d 1299, 1305 (5th Cir. 1995) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1992)). Where factual disputes exist in the assertion of qualified immunity during summary judgment, the plaintiff's version of the facts is accepted as true. Kinney v. Weaver, 367 F.3d 337, 348 (5th Cir. 2004).

It is without question that Ms. Brown had a constitutional right to due process and equal protection under the law pursuant to the 5th and 14th Amendments to the U.S. Constitution. Thus, without question, Plaintiffs have satisfied the first part of the test enumerated in Siegert v. Gilley by alleging a violation of Ms. Brown's constitutional rights. Similarly, there is no question that the 8th Amendment existed and was clearly established at the time of the Defendant's actions.

The third prong of the Siegert test, that the actions of Defendant Tucker were objectively unreasonable has also been met.  See also, Anderson v. Creighton, 107 S.Ct. 3034, 3038 (1987), where the Supreme Court noted that the availability of qualified immunity "turns on the 'objective legal reasonableness' of the action." Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982).  Here, Defendant Tucker's, involvement played a significant role in the deprivation of Ms. Brown's constitutional rights, and those actions were not objectively reasonable.

Plaintiffs have alleged that regardless of any policies that Defendant Tucker may have had in place, it was the custom and practice for Defendants to deny detainees medical care and to ignore their pleas for help.  Defendant Tucker's reliance on the random training certificates and "Standard Operating Procedures" is meaningless given what happened just seven months before with Harvey Hill and then with Ms. Brown. Whatever policies may have existed, they were insufficient and amounted to deliberate indifference to the needs of Ms. Brown and supports the denial of qualified immunity in this case. Placing a pregnant Ms. Brown, who had complained of excruciating pain and vomiting, in a holding cell to purportedly observe her in 15-minute intervals was clearly insufficient and unreasonable as she died a painful death during that time. Like Harvey Hill, who was also placed in a holding cell to be observed in 15-minute intervals, Ms. Brown was ignored, left untreated and left to die.  Further, discovery needs to take place to examine Defendant Tucker's assertions that Ms. Brown was observed. At this juncture, we have no information on if the observations imply meant passing by the cell, or looking in the small window on the door of the cell, or opening the cell, or physically checking on Ms. Brown, or speaking to Ms. Brown.  These critical and disputed facts will be uncovered during discovery. However, the meager acts undertaken by Defendant Tucker and his employees, were clearly insufficient and unreasonable as Ms. Brown died a tragic, painful and preventable death under Defendant's custody and care.  Placing a severely ill person in a holding cell with no treatment is unconstitutional. Under these circumstances, since Defendant Tucker's actions could never be considered objectively reasonable as a reasonable person knew or should have known that Ms. Brown was suffering from a serious and deadly medical condition. Ignoring her pleas for help was a violation of her constitutional rights defeating Defendant Tucker's assertion of qualified immunity.

These are all questions of fact that cannot be resolved at this stage. Resolving these issues of fact requires evaluation of the credibility of the witnesses and an examination of the yet to be produced evidence, which can only be accomplished at trial.

These genuine issues of material fact cannot be resolved at the motion to dismiss or summary judgment stage.

### D. Plaintiffs' Federal Claim of Deliberate Indifference is Sufficiently Pleaded

Plaintiffs have alleged sufficient facts that Defendant Tucker and his co-Defendants were deliberately indifferent in that they knowingly disregarded a substantial risk of serious harm to Ms. Brown. As stated above, Plaintiffs have pleaded that the Defendant Tucker and his co-Defendants completely disregarded the obviously critical nature of Ms. Brown's condition based on a conspiracy with Madison County to deny Ms. Brown her right to medical care pursuant to municipal policy, custom or practice.

The Fourteenth Amendment guarantees pretrial detainees a right "not to have their serious medical needs met with deliberate indifference on the part of the confining officials." Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (citing, Estelle v. Gamble, 429 U.S. 97, 103 (1976); See also Hare v. City of Corinth, 74 F. 3d 633 (5th Cir. 1996).

To establish liability based on delay or ignoring of needed medical treatment, a plaintiff must show a deliberate indifference to serious medical needs that resulted in substantial harm. This can be shown by refusal to treat, ignoring complaints, or conduct that shows a wanton disregard for serious medical needs. Easter v. Powell, 467 F.3d 459,463 (5th Cir. 2006) (holding that where an inmate's heart problems were known to defendants, there was in inference that they were aware of the substantial risk of harm). Similarly in the case at bar, Plaintiffs have clearly pleaded that Defendant Tucker and his co-Defendants were aware of Ms. Brown's pregnancy and

debilitating abdominal pains, and it can thus be inferred that they knew of the substantial risk to her health posed by ignoring her pleas for care. Alderson v. Concordia Parish Correctional Facility, 848 F. 3d 415 (5th Cir. 2017) (holding that plaintiff may recover for pain suffered during delay in treatment due to deliberate indifference); Hanna v. Corrections Corporation of America, 2004 WL 180359 (5th Cir. 2004) (holding that plaintiff may recover for any injury caused by a delay in care). In fact, the deliberate indifference resulted in the ultimate substantial harm to Ms. Brown, her painful and tragic death due to a ruptured ectopic pregnancy.

A cursory observation of Ms. Brown would have made it clear that she required immediate and critical medical attention, but Defendants ignored her, failed to provide any medical attention or treatment, and failed to transport her to a facility or a provider who would do so, resulting in her painful death. This is a case of complete and deliberate indifference to Ms. Brown altogether, resulting in her death. Delaughter v. Woodall, 909 F. 3d 130 (5th Cir. 2018), citing Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir.1993)

The standard of deliberate indifference allows courts to distinguish omissions which are an intentional choice from those which are simply unintentional oversights. Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 551 (5th Cir. 1997). The Fifth Circuit has defined a serious medical need as one which is "so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). In this case, Plaintiffs have sufficiently pleaded that Ms. Brown was in obvious acute and dire distress, she complained repeatedly of pregnancy-related abdominal pains, she had vomited repeatedly and was in excruciating pain, and that this information was known to the defendants. Therefore, the defendants were on notice of Ms. Brown's severe medical condition, yet they ignored her and provided no medical assistance. Further, as the jail death of Harvey Hill had occurred just a few

months before under Defendant Tucker's watch, he clearly had subjective knowledge of the substantial risk of serious harm that could result from ignoring Ms. Brown's pleas for help.[2] When an individual is taken into custody by law enforcement personnel, a special relationship arises creating a concomitant duty to detainees. DeShaney v. Winnebago County, 489 U.S. 189 (1989). Thus, custodial officers may be liable under 42 U.S.C. Section 1983 (1981) for the death of a pretrial detainee if they acted with deliberate indifference to the individual's medical needs. In the instant case, Defendant Tucker the was deliberately indifferent in failing to take steps to meet the serious medical needs of Ms. Brown and thus his request for qualified immunity must be denied. Plaintiffs have sufficiently pleaded that Defendant Tucker knew or should have known that Ms. Brown was suffering from a serious and fatal medical condition and that the failure of the Defendants to react to or provide treatment for Ms. Brown's condition was a direct cause of her death.

Further, to sit idly by during the 7 months between Mr. Hill's tragic and preventable death and Ms. Brown's tragic and preventable death surely amounts to deliberate indifference.

**E.   Claims Against Defendant Tucker in His Official Capacity Should Remain**

During Ms. Brown's detention at MCDC, Defendant Tucker and his co-Defendants violated Ms. Brown's constitutional rights which ultimately led to her death.   Accordingly, Plaintiffs' claims against Defendant Tucker in his official capacity should not be dismissed as a Plaintiff may sue an individual-Defendant employed by a governmental entity in their individual capacity, official capacity or both.  42 U.S.C. § 1983.

Case law makes clear that a claimant may sue an individually-named Defendant

---

[2] Defendant Tucker's characterization of Ms. Brown's death as an "episodic act" is belied by the fact that Harvey Hill died in the same facility seven months prior. (Deft's Memo at 5). Further, even if deemed an episodic act, Plaintiffs have established that Defendant Tucker is individually liable as he had knowledge of the substantial risk of serious harm and responded to that risk with deliberate indifference.

government employee in his individual capacity, official capacity or both.  Goodman v. Harris
County, 571 F.3d 388 (5th Cir. 2009); Turner v. Houma Mun. Fire and Police Civil Service Bd.,
229 F.3d 478 (5th Cir. 2000);  Senu-Oke v. Jackson State University, et al., 521 F.Supp.2d 551
(S.D. Miss. Oct. 12, 2007). Based on the foregoing, Defendant Tucker's Motion to Dismiss is
without merit. In Breland v. Forrest County Sheriff's Department, 2013 WL 1623997 (S.D.
Miss. April. 15, 2013), the Court did not dismiss the official capacity claims against the
individual Defendants as duplicative.  Rather, the Breland Court specifically stated that "Section
1983 claims may be brought against government employees 'in their individual or official
capacity, or against a governmental entity.'" [internal citations omitted]. Id. at *3.  Thus, Plaintiff
respectfully requests that the Court not dismiss Plaintiff's claims against Defendant Tucker in his
official capacity.

**F.  The Complaint was Filed Within the Applicable Statute of Limitations**

The properly pleaded wrongful death due to the deliberate indifference of Defendant Tucker
and his co-Defendants in denying Ms. Brown care in this action is governed by Mississippi Code
Annotated §15-1-49, Actions without prescribed period of limitation; actions involving latent
injury or disease and its accompanying three-year statute of limitations.  Pursuant to §15-1-49(1),
"all actions for which no other period of limitation is prescribed shall be commenced within three
(3) years after the cause of such action accrued.[3]  With Ms. Brown's death having occurred on
December 23, 2018, Plaintiff had until December 23, 2021 to file the deliberate indifference
wrongful death claim.  Filing it on May 14, 2021, was within the applicable statute of limitations.

Further, pursuant to §15-1-49(2), in actions without a prescribed period of limitation and which

---

[3] Defendant Tucker's reliance on Mississippi Code Annotated §15-1-35 is misplaced as that section related to
    assault, battery, slander and other torts, but not wrongful death.

14

involve a latent injury, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.  Here, the cause of death was not discovered or known to Plaintiffs until on or about April 26, 2021, when the autopsy report was completed and provided.  There was no possible diligence by Plaintiffs that could have discovered or known about an autopsy report that had not yet been completed. Under the "discovery rule," the statute of limitations would expire two years from the discovery of the autopsy report, on or about April 26, 2023, making the May 14, 2021 filing timely.

Since Plaintiffs could not have known or discovered the cause of death until on or about April 26, 2021 when the autopsy report was completed and provided, the cause of action would not have accrued until that time, making the May 14, 2021 filing timely.[4]

## CONCLUSION

For the reasons set forth, Plaintiffs respectfully request that the Court deny Defendant Tucker's motion for summary judgment in its entirety. In the event that the Court is inclined to grant any portion of Defendant Tucker's motion, Plaintiffs respectfully request that such decision be without prejudice, providing Plaintiffs an opportunity to amend their pleading.  There is no prejudice in allowing a Second Amended Complaint as Defendant Tucker has been on sufficient notice of Plaintiffs' claims. In addition, pursuant to the discovery rule, the statute of limitations has yet to run on some potential claims, including medical malpractice.

Dated: New York, New York
      March 25, 2022

                                           /s/
                                 Derek S. Sells Esq. *(pro hac vice)*
                                 THE COCHRAN FIRM
                                 Attorneys for Plaintiff
                                 55 Broadway, 23rd Floor

---

[4] Mississippi Code Annotated §15-1-36(2) further states that the statute of limitations could be as long as "seven (7) years after the alleged act, omission or neglect occurred." Once discovery is provided, plaintiffs intend to seek to amend the complaint to add an additional count of medical malpractice.

New York, New York 10279
T: (212) 553-9215
dsells@cochranfirm.com

 /s/
Carlos Moore, Esq. (MSB# 100685)
THE COCHRAN FIRM
306 Branscome Drive
P. O. Box 1487
Grenada, MS 38902-1487
T: (662)227-9940
cmoore@cochranfirm.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

On the 25th day of March 2022, a true and accurate copy of the PLAINTIFF'S

OPPOSITION TO DEFENDANT TUCKER'S MOTION FOR SUMMARY JUDGMENT and

AFFRIMATION OF DEREK S. SELLS was served to all parties by ECF to the following:

TO:    PAGE, KRUGER & HOLLAND, P.A.
       Stephen P. Kruger
       Thurman L. "Smith" Boykin, III
       Hannah Katherine Herrin
       10 Canebrake Blvd., Suite 200
       PO Box 320999
       Flowood, Mississippi 39232
       601-420-0333
       skruger@pagekruger.com
       sboykin@pagekruger.com
       hherrin@pagekruger.com
       *Attorneys for Mississippi Correctional Services*
       *and Defendant Camper*

       CURRIE, JOHNSON & MYERS, PA
       Rebecca Cowan
       P.O. Box 750
       1044 River Oaks Drive (39232)
       Jackson, MS 39205-0750
       601-969-1010
       bcowan@curriejohnson.com
       *Attorneys for Madison County and Defendant Tucker*

                            __/s/_____
                            Derek S. Sells, Esq.